## STATE v. YOUNG.

1. Under the old criminal practice, an objection that the indictment charged no criminal offence should have been taken only by demurrer; but under the act of 1887 (19 *Stat.*, 829), this objection may be taken by demurrer *or* by motion to quash.
2. An order quashing an indictment is in effect a final judgment, and from such an order the State may appeal.
3. The right to erect a wharf and charge for its use below high tide mark on a navigable stream is a franchise, which can only be obtained from the State, and any one doing so without authority is guilty of a public nuisance.
4. It is a matter of doubt whether any particular act is repealed by the General Statutes of 1872, by its incorporation into the schedule of acts which "have expired, or have been, or are hereby, expressly repealed."
5. An act of 1768, in its first section regulated wharf charges at the port of Charleston. An act of 1778, entitled an act to amend this act of 1768, made other wharfage rates, and repealed said first section. An act of 1807, entitled an act to amend this act of 1778, made a schedule of wharfage rates, and repealed so much of the act of 1778 and other acts as were repugnant thereto. The General Statutes of 1872 expressly repealed the acts of 1768 and 1778, but not the act of 1807; and declared all navigable streams to be public highways and free to all, and any obstruction thereof to be a nuisance. *Held*, that the act of 1807 was not repealed by implication.
6. The act of 1807 was affirmative and original, and was not repealed by the repeal of the act of 1778, even though in its title declared to be an amendment of that act (1778), and it is still of force.

Before PRESSLEY, J., Charleston, March, 1888.

The indictment in this case was as follows:

THE STATE OF SOUTH CAROLINA.
At a Court of General Sessions begun and holden in and for

the County of Charleston, in the State of South Carolina, at Charleston, in the county and State aforesaid, on the fourth Monday of February in the year of our Lord one thousand eight hundred and eighty-eight, the jurors of and for the county aforesaid, in the State aforesaid, upon their oath present: that Thomas Young, late of the county aforesaid, on the fifteenth day of October, in the year of our Lord one thousand eight hundred and eighty-seven, and on divers other days both before and since that day and up to the taking of this inquisition, with force and arms at Charleston, in the county and State aforesaid, did wilfully, unlawfully, and injuriously impose, demand, and receive in his character as wharf owner and wharfinger, on, of, and from persons, owners of certain merchandise and commodities, known as bales of cotton, and doing business as merchants in and about the said city of Charleston, a charge of eight cents wharfage for each bale of cotton shipped at certain wharves, known respectively as Vanderhorst's wharf, Commercial wharves, and Southern wharf, for the use of said wharves, which are erected on the shores of the harbor and port of Charleston, and doth still continue so to impose, demand, and receive the said sum of eight cents wharfage for each bale of cotton so shipped at the said wharves, and either of them to the common nuisance of the good citizens of the said State, to the injury of the said port, and to the evil example of all others in like manner offending against the form of the statute in such case made and provided, and against the peace and dignity of the same State aforesaid.

And the jury aforesaid, upon their oath aforesaid, do further present, that the said Thomas Young, .on the fifteenth day of October, in the year of our Lord one thousand eight hundred and eighty-seven, and on divers other days, both before and after that day, and up to the taking of this inquisition, with force and arms at Charleston, in the county and State aforesaid, did wilfully, unlawfully, and injuriously impose, demand, and receive in his character as wharf-owner and wharfinger, on, of, and from persons, owners of certain merchandise and commodities known as bales of cotton, and doing business as merchants in and about the said city of Charleston, a charge of eight cents layage for each bale of cotton shipped at certain wharves known respectively as Vanderhorst's wharf, Commercial wharves, and Southern wharf, for the use of said wharves erected on the shores of the harbor and port of Charleston, and still doth continue so to impose, demand, and receive the said sum of eight cents layage for each bale of cotton so shipped at the said wharves, and either of them, to the common nuisance of the good citizens of the said State, to injury of the said port, and to the evil example of all

others in like manner offending against the form of the statute in such case made and provided, and against the peace and dignity of the same State aforesaid.

The judge ruled as follows:

I have listened as a learner to this very full and learned discussion, and it has interested me deeply. Something was said about my patience. It was not patience; it was that I was interested in it. I listened as one of the audience—not as matter of infliction, but as matter I wanted to hear; and now I must try and give you, as well as I can, the conclusions to which I have arrived after listening to this discussion.

The allegation of the indictment simply is that the party charged on a certain day and on divers other days, and continued to charge, a certain amount as wharfage, and a certain amount as layage. There is no allegation in the indictment that those charges were unreasonable and contrary to the common law—no charge at all that they were unreasonable. It is claimed, however, that under the constitution he had no right to charge at all, and that therefore if the charge be in violation of a statute, it is an indictable offence. That is my opinion: that is, if it be in violation of a statute. I do not consider the right to a wharf as a private right pertaining to the owner of the land. It has always been regarded as a franchise, to be conferred either expressly or by such recognition as amounts to an express conferring of it. A wharf below high water mark on a fresh water navigable stream, or a wharf on salt water within the ebb and flow of the tide, is not a private right pertaining to the owner of the land. It is a franchise.

The question, then, is, does the constitution forbid the charging of any wharfage? I think not. The expression, "unless it be authorized by the legislature," means either expressly authorized or by such recognition as amounts to acknowledgment of authority. It does not call for any express act. Other legislation recognizing the right may confer a franchise just as much as an express act. Now, these wharves have been in use for over a hundred years. Within that time a charter would be presumed five times over granting the franchise. But we are not left to

presumption on that point at all. Our statute books are full of acts which expressly recognize the existence of those rights, and recognizing them admits that the parties have a franchise, and have acquired it in some way. So they have a franchise, and the charge of wharfage is legal, unless there be some act of the legislature fixing the amount of the charges. If there be such act, then the charge must be limited to the terms of the act, if there be such act fixing the amount.

I consider the law to be clear, that one who serves the public under a franchise, if he does exceed the limits allowed by law, is guilty of a common nuisance, for that matter concerns the public trade. It is claimed that if there be an act, it is a private act, and only concerns the owners of cotton and rice, and not the public. The obstruction of a highway no more concerns the whole public. It only concerns those who may have to travel that way. The question is, have all the citizens the right to travel that way? If so, the obstruction of the road affects them even if they never travel it. It is not a private act, because all citizens may be shippers of cotton and rice. Because one does not choose to do so to-day, he may choose to do so to-morrow.

So that if the act is in existence, it is not a private act at all. Is it in existence? That is one of the points on which, somehow or another, I do not know when or how, in my early professional life I formed a deliberate opinion. I do not know how I formed it, but for forty years it has been my opinion that if an act of the legislature be amended, and the act amended be repealed, the whole is repealed. That has always been my opinion, and I see nothing in the discussion to-day to change my opinion. Good authorities lay it down that if the amended act treat of the whole subject of the original act, it becomes the original act, and repeals the other act. But the act of 1807 does not treat of the whole subject. It treats only of two subjects not in the original act. It is a mere addition to the original act. The original act professed to fix the rate of wharfage on all manner of commerce. It was found that cotton and rice were left out, and the act of 1807 put in cotton and rice. It did not profess to treat of the whole subject, and was never held nor supposed to be a repeal of the original act; for if it had been, all the commerce that has

passed over the wharves from 1807 until those acts were repealed was charged for without provision of law. I hold that the act of 1807 was simply an amendatory act, and simply added to the other acts a regulation on rice and cotton.

This act, then, being repealed, I find no act of the legislature that regulates the rate of wharfage in this State. If there be no act, then what is the law? The law is that he who serves the public under a franchise must make his charges reasonable and proper. That is the common law. If this indictment cannot be sustained under an act of the legislature for want of such an act, then can it be sustained at common law? My opinion is, that it could have been sustained under the common law if there had been in the indictment an allegation that the charges were unreasonable and improper. But there is no such allegation, and that allegation is necessary to the sustaining of the indictment. If it had been there, I would have held it good. I presume that those allegations were not put there simply because the solicitor intended it as an indictment under the act, and considered that the violation of the act was an indictable offence. This indictment was framed entirely with reference to that act, and our attention was not called to the fact that the act was repealed.

I charged the grand jury that there was such an act unrepealed, in relation to a public matter of this sort, and if excessive charges beyond those allowed in such act were made, then such action was a nuisance. I said to them: "Gentlemen, I don't know whether this is a nuisance or not. I do not profess to be learned on a question of this sort that I have not looked into, and shall not announce a positive opinion until I hear the question discussed." "But," I said, "if there be an act, and the charges are in excess of those allowed by the act, it is your duty to allow a petit jury to pass upon the matter."

That act being repealed, and the indictment being framed with reference to it, the indictment cannot be sustained under any statute. And the common law offence of unreasonable charges not being before the solicitor or myself, for the lack of that allegation the indictment cannot stand. That allegation was necessary to make it a common law nuisance, viz., that this person was putting upon the public unreasonable and improper charges.

Such allegation not being there, the indictment cannot stand, and is accordingly quashed.

The solicitor moved to amend the indictment by inserting in the same at the proper place the words "unreasonable and improper." The motion was refused. Judge Pressley said : "I do not think this is a clerical error which can be amended. It is not mere matter of form. It is a different offence. One is the violation of an act, and the other is making unreasonable charges. The common law right is to limit him to charges that are reasonable."

In answer to a question by Mr. Barker, the judge said : "I have ruled that frequent recognition by the legislature of the right of the parties is equivalent to an act. I regard the acts of 1768, 1778, and the act of 1807 as recognition of their right. And I regard all the acts requiring them to clear the docks, to keep the wharves in order, &c., as legislative recognition of the right, and consequently amounts to authority."

*Mr. Jervey*, solicitor, and *Mr. T. G. Barker*, for appellant.

*Messrs. Mitchell & Smith*, contra.

March 20, 1889. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an indictment for a nuisance against Thomas Young as wharfinger of certain wharves in the port and harbor of Charleston, for charging, demanding, and receiving larger rates and sums than the law allows, viz., a charge of eight cents wharfage for each bale of cotton shipped at said wharves ; and also did demand and receive a charge of eight cents layage on every bale of cotton passed over said wharves, "to the common nuisance of the good citizens of the said State, to the injury of the said port and to the evil example of all others in like manner offending, against the form of the statute in such case made and provided, and against the peace and dignity of the same State aforesaid." (The indictment should be set out in the report.)

On reading the indictment to the defendant, and before the jury were sworn, the defendant's attorney moved to quash the

indictment, on the ground that on its face there is no common or public nuisance charged, for the following reasons: (1) "That the act of 1807 had been repealed, and consequently there was no act in force regulating charges. (2) That the limitation of charges at common law was that they must be reasonable. (3) That as to the prohibition of the constitution, the long usage and recognition by the legislature warranted a presumption of a legislative grant." After argument, the Circuit Judge quashed the · indictment; holding that, although the right to charge wharfage was a franchise, and one exercising it without proper authority, or exceeding the authority given, would be guilty of a common nuisance, nevertheless this indictment was not good at common law, because it did not allege that the charges were "unreasonable and improper," nor under the statute, for the reason that there was no statute in existence regulating charges—the statute of 1807, under which the indictment was framed, having been, as he thought, repealed indirectly by the General Statutes of 1872, chap. CXLVII., page 768.

The solicitor for the State appealed from the order quashing the indictment on the following grounds: "1. That his honor erred in granting a motion to quash the indictment on the grounds proposed, which were a proper subject of demurrer. 2. That his honor erred in ruling that the indictment was defective as an indictment at common law, because the charges for wharfage and laying were not therein characterized as 'unreasonable,' and therefore quashing the indictment. 3. That the indictment in this case, in addition to allegations as to time and place as required by law, charges the crime substantially in the language of the common law, and so plainly that the nature of the offence charged may be easily understood, and his honor therefore erred in quashing the same. 4. That his honor erred in holding that the offence charged does not lie for violation of the constitution and statutes of the State in such case made and provided, and therefore quashing the indictment. 5. That his honor erred in holding that the requirements of section 40, article I., of the Constitution, forbidding the imposition of any wharfage, 'unless the same be authorized by the general assembly,' can be fulfilled by implication. 6. That his honor erred in holding that the

said clause of the constitution does not call for any express act. 7. That his honor erred in holding that the act of assembly of 1807, regulating the rate and charge for wharfage on the shores of the harbor of Charleston, had been repealed, and therefore quashing the indictment. 8. That his honor erred in refusing to allow the plaintiff to amend the indictment by adding the words 'unreasonable and improper,' which he ruled were necessary to an indictment at common law."

The respondent served the solicitor with notice, that if the Supreme Court should decide that the order quashing the indictment is appealable, and find itself unable to sustain the judgment of the Circuit Court on the grounds upon which it was rested, then that he would insist upon its being sustained on the following grounds, viz.: "1. That from the facts charged on the face of the indictment, it does not appear that the defendant was guilty of any common or general nuisance so as to subject him to a criminal indictment. 2. That the wharves having been constructed by individuals at their own proper costs and charges under the sanction of the general assembly, for the purposes of charging for the use of same, that the same were vested contract rights in the hands of the owners, subject to legislative regulation, but not to abrogation, and that the Constitution of 1868 could not, by any provision, abrogate or sequestrate those vested contract rights for the benefit of the public, without first making proper compensation to the owners," &c.

Was the order quashing the indictment appealable by the State? The defendant was not "acquitted by a jury." Indeed, his case was never given in charge to the jury, but upon being read was summarily quashed, which was certainly a final order, as it put an end to the case. As we understand it, under the former practice, motions to quash were granted for some fault in the form of the indictment itself; but when the indictment was regular in form, and the objection was to the facts or the law, the parties were put to plead the same. The old books say that "by the common law the court may quash any indictment for such insufficiency as will make the judgment thereon erroneous. But judges are not bound *ex debito justiciae* to quash an indictment, but may oblige the defendants either to plead or demur to it. * * * The

court doth not usually quash indictments for forgery, perjury, and nuisance, notwithstanding the indictments are faulty, and it is against the course of the court to quash an indictment for extortion," &c. See *Tomlin's Law Dictionary*, title "Indictment," and authorities cited.

The objection made here, in one aspect certainly, was not to the faulty form of the indictment; for it was conceded to be entirely regular and formal as an indictment under the statute, but to the law involved, and might have been presented by demurrer. But the act of 1887 (19 *Stat.*, 829) declares "that every objection to any indictment for any defect apparent on the face thereof, shall be taken by demurrer, or a motion to quash such indictment, before the jury shall be sworn," &c. We suppose that under this provision, intended to simplify and regulate the criminal practice, a defendant may now move to quash upon grounds which, before the act, would have been proper for a demurrer; and with a view to the right of appeal, we will consider it as if a demurrer had been filed and sustained. In such a case we do not see any satisfactory reason why the State's attorney, in the discharge of his official duty, may not appeal in behalf of the State. See *State v. Gathers*, 15 S. C., 372; *State v. Shuler*, 19 *Id.*, 140; *State v. Shirer*, 20 *Id.*, 392; 1 *Bish. Crim. Proc.*, 3d edit., section 76.

The seventh exception alleges error on the part of the Circuit Judge "in holding that the act of assembly of 1807, regulating the rates and charges for wharfage on the shores of the harbor of Charleston had been repealed, and therefore quashing the indictment." It was properly conceded that the right to erect a wharf and charge for its use, below high water mark in the harbor of Charleston, is a franchise which can only be obtained from the State, and any one undertaking to do so without such authority is guilty of a nuisance; yet the defendant, while exercising that right, claims that there is now no act of the legislature of force upon the subject; and that he holds the right from the State by prescription, long usage, and many legislative recognitions, especially by the acts of 1768, 1778, and 1807, while at the same time he is not bound by the limitations and restrictions in these acts, for the reason that they are now repealed, leaving to him

the general undefined right without any legislative control over it: that the repeal was effected by the "revision and consolidation" of the General Statutes, the first two acts indicated above by direct repeal, and the last, that of 1807, by indirect repeal—that is to say, upon the principle claimed as applicable, that the repeal of an act necessarily works a repeal of all acts entitled as "amendments" to it. In order to made the point clear, it will be necessary to give a condensed statement of the facts.

In 1768 the colonial legislature passed "An act for ascertaining and regulating the rates of wharfage of ships and merchandise, &c., in Charleston." It contained twelve sections, but the first was exclusively devoted to the subject of wharfage and storage, and had a long schedule of rates and commodities attached. 4 *Stat.*, 286. In 1778 was passed "An act for amending an act [giving title of the above act 1768], and for repealing the first section of said act." It covered the whole field of wharfage, and had attached another and different schedule of articles and rates, and then in regular form repealed the first section of the act of 1768. 4 *Stat.*, 435.

In 1807 was passed another act to amend an act entitled an act for amending an act entitled an act for (title of act 1768). This act provided "that immediately from and after the passing of this act, the following rates and sums respectively shall be paid, and no greater shall be demanded or exacted by owners of wharves, or any other persons, for wharfage of ships or vessels, or for landing, &c., * * * to wit: "For shipping every bale or case of cotton, four cents per bale or case," &c. 7 *Stat.*, 123. It expressly repeals so much of said act of 1778 and any other acts as are repugnant to the provisions of the act of 1807. It was to go into effect "from and after its passage," and its provisions took the place of an original enactment, certainly as to the important item of cotton, which appears in this act for the first time, showing probably that previously that article had not attained the importance of being a staple commodity of the State. This is the act which has been on the statute book as a subsisting law for nearly a century, and was not mentioned in the schedule of the General Statutes.

In 1872, the "revision and consolidation" of the General Statutes were adopted, which arranged many acts by their titles in a schedule, under the heading, "The following entitled acts, ordinances, and resolves, passed in the several years hereinafter enumerated, have expired, or have been, or are hereby, expressly repealed," &c. The title of the acts of 1768 and 1778 are found in this schedule, and are, therefore, claimed to have been thereby directly repealed. The act of 1807, however, does not appear in the schedule, but it is claimed that that also was indirectly repealed; that its title declared that it was an "amendment" of the mother act of 1768, and when the last named act was repealed, that of 1807, one of its "amendments," and therefore engrafted into it, fell with it.

It seems to us at least doubtful whether it can be affirmed of any particular act, which appears by its title on the schedule of the General Statutes, that it was thereby certainly repealed. The sweeping declaration is made as to the whole list without discrimination, but in the alternative, "expired," "before repealed," or "now repealed." Into which category could it be placed with any degree of certainty? This would seem to be a very summary and wholesale manner of sweeping off old statutes in order to clear the way for the new; but passing this, and assuming that the General Statutes (1872) declared the acts of 1768 and 1778 thereby repealed, how does the matter stand as to the act of 1807? That was not included in the schedule of 1872, and has certainly never been expressly repealed by the General Statutes, or any other.

Was the act of 1807 repealed by implication? It is quite certain that it was not. Such repeals sometimes take place when a subsequent act covers exhaustively the whole ground of one prior in time, but does not expressly repeal it. The law may, and does, imply from this substitution a repeal of the former act. Such repeals, however, are not favored in the law. Mr. Dwarris, page 154, says: "Every affirmative statute is a repeal of a precedent affirmative statute, where its matter necessarily implies a negative; but only so far as it is clearly and indisputably contradictory and contrary to the former act, in the very matter," and the repugnancy such that the two acts cannot be reconciled, for,

then, *leges posteriores priores contrarias abrogant.* The leaning of the courts is so strong against repealing the positive provisions of a former statute by construction, as almost to establish the doctrine of "no repeal by implication." There could be no repeal by implication here from the subject-matter of the repealing act, for there was in the said "schedule" no act at all, but simply the bald statement of· the title of the acts repealed, of which, as we have said, the act in question was not one.

And we may say, that there is not in the General Statutes anything which intimates an intention, on the part of those who framed them, to repeal the act of 1807, the only act remaining on the subject of wharfage, and charges for it, in the harbor of Charleston. But, on the contrary, these very General Statutes contain a chapter on the subject of "Highways," in which it is declared, that "All navigable water courses and cuts are hereby declared navigable streams, and such streams shall be common highways, and forever free, as well to the inhabitant of the State as to the citizens of the United States, without any tax or import therefor, unless the same be expressly provided for by the general assembly; and if any person shall obstruct the same, otherwise than is hereinafter provided, such person shall be deemed guilty of a nuisance, and such obstruction may be abated as other public nuisances are by the laws of the State," &c.

But it is earnestly insisted, that if there was no implied repeal here, there was an indirect repeal, based on the doctrine, that the repeal of an act necessarily carries with it all "amendments" made to said act; and that, therefore, the act of 1807 being, as stated in its title, an "amendment" of the act of 1768, fell with the latter act when it was repealed. We know of no inexorable rule of law which peremptorily requires that every act which is entitled as "an amendment" to a former act, must, therefore, be carried back and "engrafted" upon that act, so as to become part and parcel of it for all purposes. It is well settled that the title is no part of the act. "There is nothing in a name." It seems to have been the practice formerly to encumber the titles of acts by repeating fully the formal titles of former acts upon the same subject. The question must always be one of intention, to be reached by considering the character and objects of the acts. As stated

by Mr. Endlich, section 294: "But even where the amendment merges portions of the original act in the new provisions, so that, from the time of the amendment, the whole force of the enactment as to transactions subsequent to it rests upon it, the old act retaining no vitality distinct from the new one, it may be referred to as controlling past transactions; and even an amendment of an act, 'so as to read' in a prescribed way, has no retroactive force, but is to be understood as enacted when the amendment takes effect."

We incline to think that some of the seeming confusion in the case has arisen from looking alone to the titles of the acts, instead of considering the character of the enactments themselves. The act of 1768 had many sections (12), but the first section dealt exclusively with the subject of charging for wharfage and storage in the harbor of Charleston. It was so distinct from the other sections, that, like a separate act, it was susceptible of being separately repealed, without interfering with the matter of the other sections. Upon careful consideration of the whole case, we think that the act of 1778 covered precisely the same subject-matter as the first section of the act of 1768, and repealed the same—absolutely abrogating that section once and forever, both by an implied repeal and also by expressly repealing it. The other sections of the act of 1768 were left unaffected, and on that account it may be that the repealing act was entitled "an amendment."

Then, as to the act of 1807. The object of that act manifestly was to make some changes in the charges upon other articles, and to settle charges for the new article of cotton, just rising into notice as a staple commodity. In its provisions, the act is positive and affirmative, and expressly repealed so much of the act of 1778, and of other acts, as were repugnant thereto. It certainly was not the intention of the law-makers that the act should be pushed back, and be incorporated either in the act of 1778 or 1768, so as to become part and parcel thereof, and have retroactive operation accordingly. Such construction would certainly involve the absurdity of making provision for the wharfage on cotton, forty years before it came to be a considerable article of commerce, and be in direct violation of the terms of the act itself,

which directed that it should go into effect "immediately from and ·after its passage."

We think that the act of 1807, although entitled as "an amendment to an amendment," was in its provisions affirmative and original. It was upon an important subject, which the legislature, in accordance with its duty, always claimed its right to control. It has stood upon the statute book as the existing law, unchallenged for nearly a century; and we do not see anything in the law which requires the court to declare that it has been repealed, either intentionally or by implication, or indirectly, by the operation of a fixed Procrustean rule, as to the effect of amendments, leaving the whole subject absolutely "derelict" as to any legislative regulation or control. We think the act is of force, and that makes it unnecessary to consider the other exceptions.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to the Circuit for such further proceedings as may be thought necessary to carry out the conclusions herein announced.