BANKERS' TRUST COMPANY *v.* ARKANSAS RICE GROWERS'
CO-OPERATIVE ASSOCIATION.

4-3448

Opinion delivered April 30, 1934.

*Trieber & Lasley* and *Frauenthal & Johnson,* for
appellants.

*Mann & Mann,* for appellee.

SMITH, J. This cause was tried in the court below
upon the following agreed statement of facts:

"Stipulation.

"It is hereby stipulated between the parties hereto,
through their respective solicitors, that this cause may
be submitted upon the following Agreed Statement of
Facts.

"Agreed Statement of Facts.

"The Rice Growers' Co-Operative Association had a
general deposit with the Bankers' Trust Company, and
had maintained a general deposit in said bank for some-
time prior to the transaction herein complained of, and
on October 2, 1931, had on deposit $25,084.31, in the form
of a general checking account.

"That the Rice Growers' Co-Operative Association
deals in buying and marketing rice and, in making sales
of rice, it was its custom to draw drafts on the con-
signees of the rice, with bills of lading attached, and
would deposit these drafts, with the bills of lading at-
tached, in the Bankers' Trust Company and take credit
therefor on its general checking account.

"That the Bankers' Trust Company, through its
officers, suggested to the Rice Growers' Co-Operative
Association that some security or margin be placed with

said bank to protect the bank from any losses that might occur by reason of the bank giving immediate credit for such drafts and the consignees failing or refusing to pay the face value of the drafts.

"That, at the suggestion of the bank, the Rice Growers' Co-Operative Association authorized the bank to charge its general checking account with the sum of $3,000, for the purpose of securing the bank against loss on the draft collections. Thereupon the bank, of its own motion, made out the following charge ticket against the association's general checking account, to-wit:

"BANKERS' TRUST COMPANY,

"Little Rock, Ark., October 2, 1931.

"CHARGE

"Arkansas Rice Growers' Co-Operative Ass'n.,
"Stuttgart, Ark.

"Covering Certificate of Deposit payable to 'Ourselves Account Margin Arkansas Rice Growers' Co-Operative Assn. drafts.' $3,000

"Charge made by BB (Signed) BB.

"A copy of this charge ticket was transmitted, in due course, by the bank to the association, and the association accepted and retained the same.

"On the said October 2, 1931, the Bank issued a certificate of deposit, as follows:

"CERTIFICATE OF DEPOSIT.

"Little Rock, Ark., October 2, 1931.     No. 3587
"BANKERS' TRUST COMPANY      $3,000
81-25

"Ourselves account margin Arkansas Rice Growers' Co-Operative Assn. draft has deposited with the Bankers' Trust Company $3,000 & 00 cts. dollars in current funds, payable to the order of themselves, demand after date with interest to maturity only at the rate of 2 per cent. per annum, but subject to thirty days' prior notice of withdrawal and the return of this certificate properly indorsed. If at the request of the owner hereof and with the consent of said bank this certificate shall be paid before maturity, no interest shall be paid thereon.

"J. L. Spence, Tr.

"Countersigned:          "Assistant Cashier.

"D. Majors. Auditor.

"Not subject to check.

"On February 27, 1933, the Little Rock Clearing House Association, of which the Bankers' Trust Company was a member, took action, with the approval of the Governor and the Bank Commissioner, whereby all deposits of the members of the Clearing House Association were forthwith to be restricted, as to withdrawal thereof, so that the only part of any deposit thereafter withdrawable was 5 per cent. or $15, respectively, thereof, whichever was the larger, such action being taken pursuant to § 7 of act 60 of the Acts of Arkansas of 1933. The said restriction of withdrawals was validated by § 1 of act 96 of the Acts of 1933.

"On May 1, 1933, at the request of the board of directors of the Bankers' Trust Company, the Bank Commissioner duly took charge of its affairs, for purposes of management, under act 88 of the Acts of 1933. On said May 1, 1933, also pursuant to said act 88, the Bank Commissioner reorganized the said Bankers' Trust Company by the creation of a new bank at Little Rock, Bankers' Commercial Trust Company, to which certain of the assets of the Bankers' Trust Company were sold and transferred, in consideration of Bankers' Commercial Trust Company assuming 50 per cent. of the then remaining restricted balances of Bankers' Trust Company's deposits.

"All drafts of the Rice Growers' Association for which it had received credit from Bankers' Trust Company prior to the said May 1, 1933, were paid in full in due course, and the said $3,000 security has ceased to be necessary for the protection of the Bankers' Trust Company. The Rice Growers' Association was entitled to withdraw $150, as the 5 per cent. permitted to be withdrawn by the Clearing House Association action, and was furthermore entitled to 50 per cent. of the difference between $3,000 and said $150, by reason of the assumption of Bankers' Commercial Trust Company 50 per cent. of

such difference amounting to $1,425. The Rice Growers' Association has not, in fact, withdrawn the said $150 or the said $1,425, but both said amounts are available to it, so that the actual amount in controversy in the within suit is $1,425. The failure of the Rice Growers' Association to withdraw the $150 and the $1,425 assumed by the Bankers' Commercial Trust Company was due to the fact that some of its drafts were, until recently, outstanding.

"It is agreed that the Rice Growers' Association will not estop itself in this suit by accepting the $150 and $1,425 admittedly available deposit."

Upon this statement of facts it was ordered and decreed that the claim of plaintiff, Arkansas Rice Growers' Co-Operative Association "be and it hereby is allowed as a prior claim (against the Bankers' Trust Company and Marion Wasson, as Bank Commissioner in charge thereof) in the sum of $1,425, * * *."

This appeal is from that decree, and appellants state the sole issue in the case to be whether this $1,425 should be allowed as a common or general claim or should be allowed as a prior claim.

The question presented for decision involves a consideration and construction of a portion of § 1 of act 107 of the Acts of 1927, page 297, which, in our opinion, has previously been so construed as to require the affirmance of the decree here appealed from.

Section 1 of act 107 classifies the creditors of a bank of which the Bank Commissioner has taken charge as "secured creditors, prior creditors or general creditors," and proceeds to define each of these classifications. This section defines those creditors who are to be classed as "prior creditors."

Paragraph 4 of this section reads as follows: "The owner of a special deposit expressly made as such in said bank, evidenced by a writing signed by said bank at the time thereof, and which it was not permitted to use in the course of its regular business."

Paragraph 5 reads as follows: "The beneficiary of an express trust as distinguished from a constructive trust, a resulting trust or a trust *ex maleficio* of which the said

bank was the trustee, and which was evidenced by a writing signed by said bank at the time thereof.''

It is further provided in § 1 of this act that these prior creditors shall be paid in full, with certain exceptions not important here to consider, as the Bank Commissioner has in hand sufficient funds to pay the claim in question in full, notwithstanding the exceptions, if it is, in fact, a prior claim. As has been said, it has been stipulated that the only question for decision is whether the claim is a ''prior claim,'' within the meaning of § 1 of act 107.

In our opinion, the case of *Royal Arch Benefit Association* v. *Taylor,* 187 Ark. 531, 60 S. W. (2d) 915, and the cases there cited and reviewed, are decisive of this question. In that case the facts were that a bank, having in hand a general deposit, issued a memorandum, reciting that it had set aside a sum from this general deposit to purchase government bonds for the depositor. The memorandum recited that the bank, which later became insolvent, had charged the depositor's account with the sum named as an advance payment on the bonds which the bank had undertaken to purchase for the depositor. Upon the failure of the bank, its assets were taken over for purposes of liquidation by the State Bank Commissioner, and the question arose whether the sum mentioned in the memorandum had become a prior claim within the meaning of act 107 of the Acts of 1927. It was held that the writing was a sufficient memorandum to evidence an ''express trust,'' entitling the depositor to the preference given by paragraph 5 of the act, above quoted, and that it should be paid as such.

In so holding we said that the memorandum was not ambiguous, but clearly indicated the purpose for which the sum named had been withdrawn from the general deposit, and that the case was not altered because the money set aside for the purpose indicated was already in the bank at the time of the direction given for its use by the depositor and the application to be made of it by the bank. This statement was made upon the authority of the case of *Grossman* v. *Taylor,* 185 Ark. 64, 46 S. W.

(2d) 12, in which case we held that the instrument issued by the bank was as effectual to create an express trust as though the money had been checked out and redeposited. In the Royal Arch Benefit Association case, after stating the above holding in the Grossman case, we said: ''There is no particular form of writing prescribed by the statute, nor any manner pointed out therein, in which the same shall be signed, and, while this might be called a 'charge ticket,' as contended for by the appellee, it was something more. It was both a charge ticket and a contract and entitled the appellant to a preference over the general creditors and to share with the other preferred or prior creditors *pro rata,* and to have the balance, if any, classed as a common claim.'' See also *Albright* v. *Taylor,* 185 Ark. 401, 47 S. W. (2d) 579.

We find it unnecessary to determine, under the facts as recited in the stipulation hereinabove copied, whether the $3,000 deposit was a special deposit under paragraph 4 of act 107, as defined in *Albright* v. *Taylor, supra,* or was an express trust under the provisions of paragraph 5, as interpreted in the Taylor case, *supra,* for, if not one, it was the other, and in either case it is given priority by the statute.

The $3,000 was a part of an existing deposit, but it was held in both the Grossman case and the Taylor case, *supra,* that this fact was unimportant and did not alter the character of the transaction. The $3,000 was withdrawn from and set apart from the general deposit. It was no longer subject to the check of the depositor, and his general deposit was reduced by the amount thereof. The memorandum accorded the right to the bank to hold this money for the use agreed upon, to-wit, its indemnification. The memorandum created either a special deposit for this purpose, or an express trust for that purpose, and as a right of priority is given by and exists under the statute in either case, the decree according priority is correct and must be affirmed, and it is so ordered.

HUMPHREYS, J., dissents.