PACE *v.* STATE USE SALINE COUNTY.

4-3593

Opinion delivered November 19, 1934.

*Danaher & Danaher,* for appellants.

*J. S. Utley, Ernest Briner, W. A. Utley, D. M. Halbert, J. B. Milham* and *Tom W. Campbell,* for appellees.

BUTLER, J.  The facts in this case, which are undisputed, are that the treasurer of Saline County had been depositing the funds of the county, prior to December 4, 1930, in the "Benton Bank & Trust Company." At that time the treasurer was George Fish, who served as such until his death on June 20, 1931.  The Benton Bank & Trust Company became insolvent, and on said 4th day of December, 1930, the Benton Trust Company was organized and took over the assets of Benton Bank & Trust Company.  An agreement was signed by the depositors of the insolvent bank, including the county judge and county treasurer, to the effect that the county deposits in the old bank should be frozen in the new bank to be paid in installments, beginning December 20, 1930, when ten per cent. of the deposits should be paid, the remainder to be paid in four installments—ten per cent. on March 1, 1931, ten per cent. on June 1, 1931, ten per cent. on September 1, 1931, and sixty per cent. on January 1, 1932.  When the old bank closed its doors and the new bank took over its assets and assumed its liabilities, the county had on deposit the sum of $28,647, all in one account, which included the funds belonging to the county as such and to its various school and road districts. When George Fish, the county treasurer, died, the appellant, S. H. Pace was appointed as county treasurer on July 7, 1931, and entered into the discharge of the duties of his office on that date.  On July 14 he executed his official bond in the sum of $30,000 with the appellant company as surety thereon.  On the same day the county court of Saline County designated the Benton Trust Company as one of the depositories, conditioned that it would execute a depository bond as provided by law. On the same day, pursuant to the order of the court, said trust company filed with the county clerk its bond signed by Robert F. Lambeth, H. W. Thompson, L. B. White, W. J. Cox, H. W. Finkbeiner, A. V. Martin, J. A. Cunningham, and B. A. Fletcher.  This bond was examined

by the county judge and the treasurer and approved by an indorsement in writing on the bond signed by them.

On July 22, 1931, the administratrix of Mr. Fish paid to S. H. Pace, county treasurer, the sum of $14,-591.07, which constituted all the county funds in the possession of Fish as treasurer at the time of his death. This payment was made by check drawn by the administratrix in favor of S. H. Pace, county treasurer, on the Benton Trust Company. Pace issued his receipt for said sum, presented the check to the drawee bank which accepted the same and credited Pace with said sum as county treasurer. Thereafter Pace made deposits in the Benton Trust Company in his official capacity, drawing checks against the account until December 29, 1931, when that bank became insolvent and closed its doors. On this date the balance due Pace as county treasurer was the sum of $10,750.79. He filed his claim for the sum stated with the liquidating agent of the bank, no part of which has yet been paid.

Suit was brought by the State for the use and benefit of Saline County to recover said sum from S. H. Pace, county treasurer, and the surety on his official bond, and the signers of the depository bond executed as aforesaid. The court found in favor of the plaintiff against Pace and his surety and dismissed the case against the sureties on the depository bond. Both the State of Arkansas and Pace and his surety have appealed.

The first question for our consideration is, was the bond executed by the appellees a sufficient compliance with the statute to exonerate the treasurer and his surety from loss of the funds in the depository bank which became insolvent? The first legislation on the subject of county depositories which we need notice is act No. 163 of the Acts of 1927, which the appellants contend was the law governing the subject at the time of the execution of the depository bond involved, and that the bond executed complied with the requirements of that statute. Section 1 of that act provided that any bank or trust company desiring to become a depository should make a proposition to the county court, which court should, twenty days before the commencement of the

term of court at which the proposition should be received and acted upon, give notice by publication in a newspaper published in the county of its intention to receive bids from the banks desiring to become the depository of the county funds; that the bank or banks proposing to become depositories should file with the clerk of the court a sealed bid stating the rate of interest to be paid for the county funds, and that the bid should be accompanied by a certified check of not less than $250, etc. Section 4 of the act provided for the execution of a bond by the successful bidder, payable to the county "with not less than five solvent qualified sureties, who shall own in this State real estate unencumbered and of value as great as the amount of said bond, * * * which may be approved by the county court."

It is contended by the appellants that later legislation on the subject of depository banks did not serve to alter the existing law. Act No. 151 of the Acts of 1929 was entitled, "An Act to Repeal Act No. 42 of the Acts of 1927 of the Statutes of Arkansas, to Provide for the Approval of County Depository Bonds by the County Treasurer, and for Other Purposes." It is argued that as act No. 42 of the Acts of 1927 does not refer to the subject of county depository bonds, but provides merely that the Governor should have authority to relieve any public officer and his bondsmen from the payment of any public funds which said officer might have had on deposit in any bank in this State that has been designated as State or county depository and which has become insolvent, therefore, act No. 151 of 1929, not having mentioned act No. 163, could not be deemed to be an amendment of said act. Section 1 of act No. 151 expressly repealed act No. 42. Section 2 of that act dealt with a different, subject, namely, that mentioned in the title, "To Provide for the Approval of County Depository Bonds by the County Treasurer, and for Other Purposes." This, by implication, amended that part of act No. 163 providing that depository bonds should be approved by the county court, and substituted "a surety bond" for the personal bond of act 163. It is contended that this violates § 23 of art. 5 of the Constitution, which

provides that no law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended, or conferred shall be reenacted and published at length. This section has no application to implied amendments by later legislation to existing laws, and § 2 of act No. 151 does not offend against it. *Perkins* v. *Du Val,* 31 Ark. 236; *Little Rock* v. *Quindley,* 61 Ark. 622, 33 S. W. 1053; *Boyer* v. *State,* 141 Ark. 84, 216 S. W. 17.

Appellants also insist that act No. 139 of the Acts of 1931, purporting to be an amendment of act No. 151 of 1929, does not affect act No. 163; first, because no mention is made in act No. 139 of act No. 163 of the Acts of 1927. The title of that act is: "An Act to Amend § 2 of Act No. 151, Approved March 20, 1929." The pertinent part of that act is as follows:

"No award by any county court or judge thereof, to any bank or banks of custody of any county funds shall be effective until each such bank receiving such award shall file with the county clerk a bond conditioned for the faithful and safe holding and keeping of all county funds placed with it and the due payment of the same according to law; nor until such bond shall have been approved by the county court or the judge thereof and the county treasurer.

"Such bond may be executed by a corporate surety company authorized to do business in this State, or may be signed by not less than ten solvent, qualified sureties, who shall own in this State unincumbered real estate of the value of the amount of the bond over and above the debts and exemptions of the sureties. Each surety shall make an affidavit giving the description of the real estate owned by him and its value over and above his debts and exemptions. Any citizen of the county may appeal to the circuit court from any approval of the bond in the same manner and to the same effect as now provided by law in the approval of official bonds."

It is true no reference is made to act No. 163 of the Acts of 1927, but it deals with the same subject as § 4 of that act and provides for a different number of

sureties, prescribing how their qualifications as such may be shown. While being entitled "An Act to Amend § 2 of Act No. 151," it in reality impliedly amended § 4 of act No. 163; and this may be done, although no mention of the former act is made in the act which impliedly amends it. *Porter* v. *Waterman*, 77 Ark. 383, 91 S. W. 754.

It is further argued by counsel for the appellants that act No. 139 was repealed by act No. 222 of the Acts of 1931. That act contains two sections. Section 1 is as follows: "That act 151 approved March 20, 1929, of the acts of the General Assembly of the State of Arkansas and published on page 766 of vol. 1 of the Acts of the General Assembly of the State of Arkansas at the session of 1929 and entitled: 'An Act to Repeal Act 42 of the Acts of 1927 of the Statutes of Arkansas to Provide for the Approval of County Depository Bonds by the County Treasurer and for Other Purposes,' be and the same is hereby repealed." Section 2 is the emergency clause, giving the reasons for the passage of the act and stating the conditions which made its immediate effect important. In effect, it states the inability of a county to secure surety bonds and the resulting danger of the loss of county funds because of this. By § 2 of act No. 151, it was surety bonds only which could be accepted to guarantee the deposits of county funds.

We are of the opinion that it was not the intention of the Legislature to repeal act No. 139 of the Acts of 1931 by the passage of act No. 222 only a few weeks later. In dealing with repealing acts the same rules govern as to the construction of statutes generally. The cardinal rule for the construction of statutes is that the legislative intent should be ascertained, which may be done by construing every part of the statute together with reference to all laws which relate to the same subject as a single system, so as to give effect to the legislative intent and to carry into effect the general purpose of the system.

The subject of county depositories is an important one, and the Legislature, from time to time, has attempted to safeguard public funds by requiring depository

bonds to be executed. It is clear that the Legislature deemed the qualification and number of sureties named in act No. 163 of the Acts of 1927 insufficient to effect that purpose. By § 2 of act No. 151, *supra*, individuals as sureties were discarded, and surety companies only were deemed sufficiently solvent to execute any good bond. Because of the collapse of values and the uncertainty of all our business affairs, it was thought wise to provide (by act No. 139, *supra*) that bonds might be executed by surety companies as provided in § 2 of act No. 151, and also by individuals—ten in number—who should make a showing of their solvency by sworn statement. Certainly, it was not the intent of the Legislature by the enactment of act No. 222, *supra,* to restore the provisions of act No. 163, *supra,* relative to the execution of depository bonds which experience had proved insufficient, but only to make certain the provisions of § 2 of act No. 139, passed at the same session as act No. 222. This intention is more readily discoverable from an examination of § 1 of act No. 222, quoted *supra,* which discloses the specific purpose of that act, *i.e.,* to repeal a definite and certain law as it appears on a certain page and volume of the Acts of the General Assembly of 1929. If it had been the intention of the Legislature to include in this repeal act No. 139, *supra,* it would have so indicated by adding after the number of the act the words "and all acts amendatory thereto," or words of similar import.

Where a statute expressly repeals specific acts there is a presumption that it was not intended to repeal others not specified. In such cases there is an implied approval of the statutes not specified, as well as of an intention to leave them undisturbed. 59 C. J. 909, § 512. In the case of *State* v. *Young,* 30 S. C. 399, vol. 9, S. E. 355, it was insisted that the repeal of an act necessarily carries with it all amendments made to said act. In overruling that contention, the court said: "We know of no inexorable rule of law which peremptorily requires that every act which is entitled as 'an amendment' to a former act must therefore be carried back, and 'ingrafted' upon that act, so as to become part and parcel of it,

for all purposes. It is well settled that the title is no part of the act. 'There is nothing in a name.' * * * The question must always be one of intention, to be reached by considering the character and objects of the acts." The doctrine of that case is in line with our own decisions. *Arkansas Tax Com.* v. *Crittenden County,* 183 Ark. 738, 38 S. W. (2d) 318.

It was the duty of the county treasurer to require that the number of the securities be ten in number, and that they give evidence of their qualification in the manner pointed out in the statute, § 1, act No. 139, Acts of 1931. Failing in this duty, he remains guarantor for the payment of the county's funds deposited by him.

The contention that the funds belonging to the county are to be classed as a preferred claim is based on the theory that the bond executed by the Benton Trust Company and the sureties created an express trust by the use of the following language: "* * * and promptly pay, upon presentation of all checks drawn upon said depository by the county treasurer so long as said funds shall be in said depository to the credit of the treasurer of said county and keep all funds of said county faithfully in the hands of said bank and account for, according to law, all monies deposited by said county treasurer." As authority for this contention, we are referred to the cases of *Grossman* v. *Taylor,* 185 Ark. 64, 46 S. W. (2d) 13; *Albright* v. *Taylor,* 185 Ark. 401, 47 S. W. (2d) 579; *Royal Arch Ben. Ass'n* v. *Taylor,* 187 Ark. 531, 60 S. W. (2d) 915. We do not review these cases, for they clearly do not support the contention of appellants. The instruments involved in those cases which were held to create an express trust were clearly indicative of that intention. The bond in this case is an ordinary depository bond, the sole purpose of which was to guarantee the payment of all money deposited to the account of the county treasurer, and the court correctly found that it should be classed as a common claim.

We agree with the appellees that act No. 163 of the Acts of 1927 is not the controlling statute, but that act No. 139 of the Acts of 1931 is the law prescribing the execution of depository bonds. This, however, does not

exonerate the sureties, for, by the execution of the bond and the delivery to the proper officials, they have estopped themselves to question its binding effect. *Talley* v. *State,* 121 Ark. 4, 180 S. W. 330; *School Dist.* v. *Massie,* 170 Ark. 222, 279 S. W. 993. The bond was made for the benefit of Benton Trust Company in which appellees were stockholders and directors. "A party who has had the benefit of an agreement cannot be permitted in an action founded upon it to question its validity. It would be in the highest degree inequitable and unjust to permit a defendant to repudiate a contract, the benefit of which he retains. While this is not strictly a contract *inter partes,* it is the same in legal effect, and the same principle applies hereto." *Wasson* v. *State, use Lonoke County,* 187 Ark. 680, 61 S. W. (2d) 679.

The contention of the appellees that the bond has no validity because it was not signed by all of the directors of the bank as it had been agreed would be done is without merit. The evidence goes no further than to show an agreement among the appellees themselves, and there is no proof that this agreement was communicated to the county judge or treasurer, nor were they advised that the bond was not to become effective until signed by all eleven directors. As a matter of fact, it was delivered as a fully executed instrument, and it was upon the faith of this bond, according to the undisputed evidence of the treasurer, that the deposits were made.

There is likewise no merit in the appellees' contention that there was no breach of the conditions of the bond. The evidence is certain that from and after the 20th day of February, 1931, all the funds deposited by the treasurer were new money, for on that date it is admitted that Mr. Fish, who was then the treasurer, was overdrawn in a small sum. Therefore, none of the funds from that date on could have been frozen deposits, as claimed by appellees, because all of these the bank had permitted to be withdrawn. Another reason why this contention is untenable is that when Mr. Pace took over the office of treasurer, the administratrix of Mr. Fish delivered to him a check on the bank for the amount of funds in the hands of Mr. Fish as treasurer when he

died. The bank accepted this check and passed the amount thereof to the credit of Pace without informing him that any of the funds of the county were frozen or that the check was to replace that character of funds which had been withdrawn.

It is mentioned by appellees in their statement of the case, but not contended in their brief, that, because the bond uses the words "funds of the county," their liability extends no further than for repayment of the amount due the county arising from the general revenues and did not include liability for school and road district funds which were included in the account of the county treasurer. The answer to this is that the words by which their liability is sought to be limited are substantially the same as contained in the statute. In providing for the award to banks of the custody and the execution by them of bonds, the words "county funds" are used, which is, of course, equivalent to "funds of the county." These words were used in the act so as to include not only the funds belonging strictly to the county, but all such as it collected and preserved as the agent of school and road districts within the county. Any other interpretation would wholly nullify the purpose of the act. Similar language in the bond as is in the statute must be construed as we construe the language of the statute in order to carry out its purpose. *Huffstuttler* v. *State*, 183 Ark. 993, 39 S. W. (2d) 721.

It follows from the views expressed that the execution of the depository bond, not being in conformity to the statute, did not relieve the treasurer as guarantor for the safety of the county deposits and that he and the surety on his official bond are primarily liable to the State for the use of Saline County; and that appellees are secondarily liable to S. H. Pace and the appellant company for the amounts they pay out on the judgment.

The decree of the trial court is therefore affirmed as to Pace and his surety and reversed as to appellees, with directions to enter a decree in accordance with this opinion.

Mehaffy, J. I agree to that part of the decree affirming the decree of the lower court, but dissent to that

part reversing a portion of lower court's decree. In other words, I think the decree should be affirmed.