The Honorable Tom Allen, Chair Homes Inspector Advisory Board 47 Jamestown Drive Searcy, AR 72143
Dear Chairman Allen:
This is in response to your request for my opinion on various related questions that you have posed as follows:
1. References:
a. § 17-52-107(b)(1) of the Arkansas Statutes states:
 "(b) The board shall: (1) Decide the subject content and standards which will be acceptable to meet the educational standards with regard to home inspection courses as required by law; and. . . ."
 b. § 17-52-103(a)(3)(D) of the Arkansas Statutes lists the following as one of four sets of qualification which an applicant can use as a basis for registration:
 "(D) A high school diploma or its equivalent, work experience doing home inspections for at least twenty (20) home inspections for compensation, and successful completion of at least ninety (90) core hours of a real estate inspection education program."
2. Request guidance or a legal opinion regarding the following:
 a. It appears that the Board could apply reference 1.a to rule that only resident training courses would be acceptable under reference 1.b. (as opposed to correspondence courses.) Conversely, does reference 1.a require the Board to establish standards for all forms of training courses, apprenticeship programs, etc.[?]
 b. Likewise, it appears that the Board could apply reference 1.a to rule that the word "a" in the phrase ". . . ninety (90) core hours of a real estate inspection education program" of reference 1.B means that the 90 hours be part of one course curriculum in lieu of two or more courses, which combined, total 90 or more hours. The logic in such a conclusion would be that a single 90-hour course would allocate a sufficient number of hours to each topic to allow in depth training in proportion to the complexity of each topic. Conversely, two courses totaling 90 hours would presumably cover the same topics, but neither would be able to teach the depth of a topic that could be accomplished in a single 90-hour course.
 c. Does reference 1.a above mean that whatever standards the Board establishes, must be literally applied to all applicants, or is there latitude to make exceptions based on the applicant's particular qualifications or circumstances?
 3. A concern, which the Board shares, was surfaced during discussions of the registration statute in the 2001 Legislature. The concern being that the Board has literally applied the four sets of qualifications for registration in § 17-52-103(a)(3). Being of the opinion that the statute allowed no deviations from the four sets of qualification, the Board has recommended against the registration of some persons who appear to be otherwise well qualified, but did not literally meet a set of qualifications. . . .
 4. Since attempts to improve/clarify the registration statutes failed in the 2001 Legislature, request the existing statutes be scrutinized to determine what latitude, if any, the Board has in applying the education standards and qualifications for registration.
RESPONSE
At issue is the scope of discretion afforded the Home Inspector Advisory Board (the "Board") in registering applicants under the Arkansas Home Inspectors Registration Act (the "Act"), A.C.A. § 17-52-101 et seq.
(Supp. 1999). Section 17-52-107(b) of the Code provides in pertinent part that the Board shall "[d]ecide the subject content and standards which will be acceptable to meet the educational standards with regard to home inspection courses as required by law." As you acknowledge in your request, A.C.A. § 17-52-103(a)(3) further sets forth four alternative requirements to qualify for registration as a home inspector:
 (A) Membership or candidacy in, and adherence to the Standards of Practice and Code of Ethics of the American Society of Home Inspectors, Inc. (ASHI), the Arkansas Association of Real Estate Inspectors (AAREI), or an equivalent professional home inspection association. Persons in candidate status must provide evidence of having successfully completed the respective professional association's certification examination.
 (B) A high school diploma or its equivalent, work experience doing home inspections for at least one (1) year under the direct supervision of a registered home inspector, and completion of one hundred (100) home inspections for compensation.
 (C) Current professional registration in Arkansas as an architect, architectural engineer, mechanical engineer, or structural engineer.
 (D) A high school diploma or its equivalent, work experience doing home inspections for at least one (1) year, completion of at least twenty (20) home inspections for compensation, and successful completion of at least ninety (90) core hours of a real estate inspection education program.
Finally, A.C.A. § 17-52-204 sets forth a short list of circumstances under which a home inspector need not be registered.
As the Arkansas Supreme Court noted in Arkansas County v. Desha County,342 Ark. 135, 140-41, 27 S.W.3d 379 (2000):
 Our basic rule of statutory construction is to give effect to the intent of the legislature. See Rosario v. State, 319 Ark. 764, 769, 894 S.W.2d 888 (1995). We must give effect to that intent by making use of common sense and giving words their usual and ordinary meaning. Kyle v. State, 312 Ark. 274, 849 S.W.2d 935 (1993). Where the statutes are unambiguous, we construe them by looking to all laws on the subject, viewing them as a single system, and giving effect to the general purpose of the system. See Citizens to Establish a Reform Party in Arkansas v. Priest, 325 Ark. 257, 265-66, 926 S.W.2d 432 (1996) (citing Hercules, Inc. v. Pleader, 319 Ark. 702, 894 S.W.2d 576 (1995); Pace v. State Use Saline County, 189 Ark. 1104, 76 S.W.2d 294 (1934)).
In my opinion, the above-recited statutory scheme is quite straightforward in its application. It dictates that an applicant must
meet one of the four conditions set forth at A.C.A. § 17-53-103(a)(3), subject only to the statutory exemptions set forth at A.C.A. § 17-52-204. With respect to these four conditions, then, I do not believe the Board has the "latitude to make exceptions based on the applicant's particular qualifications or circumstances." See attached Ark. Op. Att'y Gen. No. 2000-095 ("I do not believe either the Board or any other entity has the authority to grant exceptions to the Act other than those set forth at A.C.A. § 17-52-204. . . .").
I do not mean the foregoing to suggest that the Board lacks discretion to set standards; on the contrary, as noted above, the Board is expressly charged with doing so in A.C.A. § 17-52-107(b).[1] However, you appear to be asking whether the Board's control over "subject content and standards" might empower it to modify or to waive the requirement that an applicant seeking registration pursuant to A.C.A. § 17-53-103(a)(3)(D) complete "ninety (90) core hours of a real estate inspection education program." I believe this question must clearly be answered in the negative. Assuming an applicant seeks to rely on this subsection as a basis for registration, I believe it is obligatory that he or she meet all conditions set forth therein.
This is not to say that the Board lacks discretion to determine what constitutes "ninety (90) core hours of a real estate inspection education program." The Code at no point directs that an applicant must have completed any particular "real estate inspection education program" and fails even to define the term. Given the Board's statutory charge over "subject content and standards," I believe the Board has considerable discretion to determine what type of program will suffice. It is well established under Arkansas law that a court will give considerable deference to a board's interpretation of a statutorily undefined term and generally will uphold that interpretation unless it is clearly wrong. SeeArkansas State Medical Board v. Bolding, 324 Ark. 238, 920 S.W.2d 825
(1996). As a corollary proposition, I believe the Board in all likelihood has discretion to determine whether the referenced "education program" must comprise a single course or whether an accumulation of hours from different programs might suffice. In exercising this discretion, I believe the Board might even determine on a case-by-case basis whether accumulating hours would be appropriate, with the decision in all likelihood turning on whether participation in several courses involved unproductive repetition of effort or omission of relevant training. Finally, I believe the Board has considerable discretion to determine what category of training would qualify as "core hours" — subject, of course, to the condition that the Board's interpretation of this term cannot be clearly wrong.[2] Id. However, given the unambiguous nature of the statute, I do not believe the Board has any discretion to forgive any portion of the 90-hour requirement for applicants relying on this subsection.
I am unable formally to opine whether the Board could rely on its statutory authority "to rule that only resident training courses would be acceptable . . . (as opposed to correspondence courses)." Although nothing in the Code dictates that the required "real estate inspection program" be "resident," a finder of fact might conclude that the circumstances justified the Board in imposing such a requirement. I am neither equipped nor authorized to draw such a factual conclusion. In making this determination, the Board should bear in mind that if a finder of fact were to conclude that any such restriction unreasonably discriminated against interstate trade, the restriction would be deemed impermissible as violating the commerce clause of the U.S. Constitution.See Pike v. Bruce Church, Inc. 397 U.S. 137, 142 (1970); Ark. Op. Att'y Gen. Nos. 91-419 and 90-143 (opining that requiring chiropractors to pursue continuing education in Arkansas violated the commerce clause). Likewise, I cannot opine whether a "correspondence course" might fulfill the statutory requirement. I can only note that accepting such a course as a qualification would be warranted only if the facts indicated that it comprised "at least ninety (90) core hours of a real estate inspection education program."
In summary, I believe the Board is correct in its reported determination that it must "literally appl[y] the four sets of qualifications for registration in § 17-52-103(a)(3)," subject only to the condition that no registration is required if one of the statutory exemptions applies. In my opinion, regardless of how qualified it might deem a candidate, the Board lacks discretion to approve his or her registration unless the conditions of at least one set of qualifications has been met. However, as reflected in my discussion above, I believe the Board might exercise considerable discretion in determining what types, as opposed to what amount, of course work might satisfy the education requirement set forth at A.C.A. § 17-52-103(a)(3)(D).
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
Enclosure
[1] This assignment to the Board of the duty to determine "subject content and standards" strikes me as appropriate in light of the fact that the composition of the Board as mandated by statute would appear to render its members particularly qualified in such matters. See A.C.A. § 17-52-107(a)(1).
[2] In Ark. Op. Att'y Gen. No. 98-262, my immediate predecessor responded as follows to the question of whether the 90-core hour requirement could only be met through classroom work:
The relevant definition of the word "core" in Webster's Dictionary is:
 An arrangement of a course of studies that combines under certain basic topics material from subjects conventionally separated and aims to provide a common background for all students[.]
 Webster's Seventh New Collegiate Dictionary 185 (1972).
 As you can see, the requirement of classroom instruction is not reflected in this common definition. Had the legislature intended to impose such a requirement under § 17-52-103(a)(3)(D), it presumably could easily have done so. In construing the language of this provision on its face, I must conclude that "core hours" does not necessarily mean classroom hours. Legislative action would, I believe, be necessary to impose such a requirement.
Although I believe my predecessor was absolutely correct in his opinion regarding the law in effect in 1998, the law changed with the creation of the Board by Act 1312 of 1999. Given the powers invested in the Board by the legislature, I do not believe that any decision to restrict core course work to the classroom would still need to be made by the legislature itself. In light of the Board's statutory control over "subject content and standards," A.C.A. § 17-52-107(b), I believe it would fall within the Board's discretion to determine whether the designated "core curriculum" should involve only classroom work. I am only reinforced in this conclusion by the fact that A.C.A. §17-53-103(a)(3)(D) imposes the additional practical requirements of a year's work experience involving at least 20 home inspections for compensation.