James GRABLE *v.* STATE of Arkansas

CR 89-68                                              769 S.W.2d 9

Supreme Court of Arkansas
Opinion delivered May 1, 1989

*Robert Meurer*, for appellant.

*Steve Clark*, Att'y Gen., by: *David B. Eberhard*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, James Grable, seeks reversal of his conviction of driving while intoxicated on the ground that the officer who arrested him did not meet mandatory qualifications to make the arrest, and thus the charge against him was invalid and the evidence presented through him was inadmissible. The state argues Grable failed to show the charge by the officer was the only one levied against him and the regulations cited by Grable were not introduced in evidence and cannot be considered. The state also argues there was compliance or substantial compliance with the regulations. We hold compliance with the regulations, of which we may take judicial notice, was mandatory, and Grable had not complied with them. The charge was invalid, and Grable was not required to present evidence that it was the only charge against him. The arrest and charge were

invalid, and the evidence resulting from the arrest should not have been admitted. We, therefore, reverse and dismiss the conviction.

Grable was arrested at 1:35 a.m., January 1, 1988, for speeding and driving while intoxicated (first offense) by Officer Carson of the Judsonia Police Department. He was found guilty of both offenses in the Judsonia City Court and appealed to the circuit court where he was convicted only of DWI. Officer Carson testified that Grable's breath smelled of intoxicants at the time of the arrest, Grable's eyes were bloodshot, and he failed the field sobriety and portable breath test. He transported Grable to Searcy where an intoxilyzer test was administered by a Searcy Police Department patrolman.

## 1. Judicial notice

■ Courts may take judicial notice of the regulations of state agencies. *Seubold* v. *Fort Smith Special School Dist.*, 218 Ark. 560, 237 S.W.2d 884 (1951); *State* v. *Martin*, 134 Ark. 420, 204 S.W. 622 (1918). The cases cited by the state hold courts may not take judicial notice of municipal ordinances and regulations, and thus they are inapplicable here. *E.g., Orrell* v. *City of Hot Springs*, 265 Ark. 267, 578 S.W.2d 18 (1979) (municipal civil service regulations); *Smith* v. *City of Springdale*, 291 Ark. 63, 722 S.W.2d 569 (1987) (municipal ordinance).

## 2. The regulations

Qualifications of candidates for police positions in Arkansas are set by regulations promulgated by the Arkansas Commission on Law Enforcement Standards and Training. By Ark. Code Ann. §§ 12-9-104 and 12-9-106 (1987), the general assembly has empowered the commission to establish minimum selection and training standards and general qualifications of law enforcement personnel.

■■ Commission on Law Enforcement Standards and Training Regulations, as abstracted, provide:

§ 1002(2)(c). Every officer employed by a law enforcement unit shall be fingerprinted and a search made of state and national fingerprint files to disclose any criminal record.

§ 1002(2)(i). Every officer employed by a law enforcement

> unit shall be examined by a licensed psychiatrist or a licensed psychologist, who, after examination, makes recommendations to the employing agency.
>
> § 1002(4). The minimum standards for employment or appointment must be completed before employment eligibility is established. Employment eligibility should depend upon the results and recommendations received by the investigator and examiners.

Arkansas Code Ann. § 12-9-108(a) (1987) provides:

> A person who does not meet the standards and qualifications set forth in this subchapter or any made by the Arkansas Commission on Law Enforcement Standards and Training shall not take any official action as a police officer, and any action taken shall be held as invalid.

Subsequent sub-sections contain exceptions for disaster or emergency situations and permit issuance of parking violation citations by law enforcement personnel who have not met the standards.

### 3. Compliance or substantial compliance

The evidence showed that Officer Carson's file contained neither a record of a completed fingerprint check nor a record of the required psychological examination. The state argues that there was compliance with the fingerprint requirement because the search had been initiated. It argues substantial compliance with the psychological testing requirement because Carson had undergone such a test in connection with previous employment by another city and because he completed the requirement within 30 days of the arrest in this case. No evidence of the previous psychological test was in Carson's Judsonia file.

We reject the argument of compliance with the fingerprint check because § 1002(4) of the regulations makes it clear that the minimum standards must be "completed" before employment.

■■ We reject the substantial compliance argument with respect to the psychological testing requirement because of the emphatic language of Ark. Code Ann. § 12-9-108(a) which makes clear the intent of the general assembly that we are not to tolerate anything but strict compliance with the regulations. We

note in passing that if we were to adopt a substantial compliance exception the obvious intent of the general assembly to improve the quality of law enforcement by enacting laws requiring standards would never be achieved.

### 4. Invalid charge

Given the failure of Officer Carson to be in compliance with the regulations at the time of the arrest, § 12-9-108 invalidates the arrest and the action taken by Carson in charging Grable. The state argues, however, that the conviction should be affirmed because Grable failed to show that the citation he was given by Carson was the only charge against him.

In *Davis* v. *State*, 296 Ark. 524, 758 S.W.2d 706 (1988), we noted that, in accordance with § 12-9-108(a), a charge filed by an unqualified law enforcement officer created a situation as if no charge whatever had been filed. However, we noted, "the appellant does not *tell us* whether the non-qualified officer's citation was the only formal charge [emphasis supplied]. . . ." Given the failure of the appellant even to argue that the charge of which he complained was the only charge against him, we declined to presume error and affirmed the conviction.

In *Helms* v. *State*, 297 Ark. 44, 759 S.W.2d 546 (1988), we were presented again with an invalid charge and we again declined to reverse because, in part, "the appellant failed *to show* that the arresting officer's citation was the only formal charge [emphasis supplied]. . . ."

■■ We must overrule both of those cases to the extent they implied or said it was the duty of the defendant or appellant to present evidence to the trial court that there was no charge against him other than the one contended to be invalid. Just as the defendant has no duty to establish any fact proving his innocence, *Griffin* v. *State*, 169 Ark. 342, 275 S.W. 665 (1925), he has no duty to prove the negative proposition that there are no charges against him other than the one before the court of which he complains. *See Austin* v. *Dermott Canning Co.*, 182 Ark. 1128, 34 S.W.2d 773 (1931), where it was held that a party should not be required to prove a negative where the means of making the proof are in the control of his adversary. It is the duty of the state to give notice of the offense charged in the charge levied against

the defendant, *Robbins* v. *State*, 219 Ark. 376, 242 S.W.2d 640 (1951). Clearly the state is in the better position to establish whatever charges it has made against the defendant.

We have no doubt it is the duty of the state to bring a proper charge. If the state is willing to stand on the charge of which the defendant complains, so be it, and the court can then determine its validity. If there is a valid charge against the defendant other than the one to the validity of which he objects, the state should be able to produce it and should have the duty to do so.

Reversed and dismissed.