Carl R. FREEMAN *v.* CITY OF DeWITT

CR 89-207                                     787 S.W.2d 658

Supreme Court of Arkansas
Opinion delivered March 26, 1990
[Rehearing denied April 23, 1990.]

*Malcolm R. Smith, P.A.*, for appellant.

*Steve Clark*, Att'y Gen., by: *Joseph V. Svoboda*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Carl Freeman, was convicted of driving while intoxicated, first offense, and sentenced to 24 hours in jail, which was reduced to time served, fined $593.00 plus costs of $51.25, had his driver's license suspended for 90 days, and ordered to participate in an alcohol treatment or an education program.

Freeman appeals on two points of error: 1) that the trial court erred in failing to suppress the results of a breathalyzer test because it was not obtained in compliance with Ark. Code Ann. § 5-65-202 (1989), and 2) the trial court erred in not dismissing the charges or in not suppressing the testimony of the arresting officer due to his failure to be in compliance with the minimum employment standards set by the Commission on Law Enforcement Standards and Training.

We reverse and dismiss on the basis of finding merit in Freeman's second point of error; consequently, we need not address his first argument.

On January 15, 1989, Freeman was stopped by Officer Stigaullde, of the DeWitt Police Department, for erratic driving. Subsequently, Stigaullde suspected that Freeman was intoxicated, due to the odor of alcohol and the results of field sobriety tests, and took him to the police station for a breathalyzer test. After he assessed the results of the breathalyzer test, Stigaullde arrested Freeman on the charge of driving while intoxicated.

Freeman alleges in his second point of error that the trial court erred in refusing to dismiss the charges or in not suppressing the testimony of the arresting officer because of the officer's failure to be in compliance with minimum standards for employment set by the Commission of Law Enforcement Standards and Training.

We recognized in *Grable* v. *State*, 298 Ark. 489, 769 S.W.2d 9 (1989), that:

Qualifications of candidates for police positions in Arkansas are set by regulations promulgated by the Arkansas Commission on Law Enforcement Standards and Training. By Ark. Code Ann. §§ 12-9-104 and 12-9-106 (1987), the general assembly has empowered the commission to establish minimum selection and training standards and general qualifications of law enforcement personnel.

Commission on Law Enforcement Standards and Training Regulations . . . provide:

§ 1002(2)(c). Every officer employed by a law enforcement unit shall be fingerprinted and a search made of

state and national fingerprint files to disclose any criminal record.

§ 1002(2)(i). Every officer employed by a law enforcement unit shall be examined by a licensed psychiatrist or a licensed psychologist, who, after examination, makes recommendations to the employing agency.

§ 1002(4). The minimum standards for employment or appointment must be completed before employment eligibility is established. Employment eligibility should depend upon the results and recommendations received by the investigator and examiners.

Arkansas Code Ann. § 12-9-108(a) (1987) also provides that "[a] person who does not meet the standards and qualifications set forth in this subchapter or any made by the Arkansas Commission on Law Enforcement Standards and Training [Commission] shall not take any official action as a police officer, and any action taken shall be held as invalid."

In *Grable, supra*, we held that strict compliance with the standards and qualifications of police officers is required by the emphatic language of section 12-9-108(a), and that substantial compliance with those requirements was insufficient.

We reaffirmed the *Grable* standard in *Johnson* v. *City of Kensett*, 301 Ark. 592, 787 S.W.2d 651 (1990), and stated that meeting the minimum employment qualifications under the Standards Act is mandatory and requires strict compliance.

In this case, Stigaullde was originally employed by the DeWitt Police Department on November 21, 1979. Two weeks after his initial employment, Stigaullde underwent a psychological examination and a fingerprint check, and the results of both of these procedures were placed in Stigaullde's personnel file.

On September 2, 1982, Stigaullde resigned from the DeWitt Police Department in order to work for the police department of Hope, Arkansas. Thereafter, Stigaullde was rehired by the DeWitt Police Department in March 1987; no additional psychological testing or fingerprint checks were performed by the police department in regard to Stigaullde's reemployment.

Freeman contends that Stigaullde's initial lack of compli-

ance with the Commission standards for employment or, in the alternative, the fact that the reports were not updated prior to his reemployment, preclude him from making a valid arrest.

Our decisions in *Grable, supra,* and *Johnson, supra,* mandate that this case be reversed on the basis of noncompliance with section 1002(2)(i) regarding the psychological report.

■ Although Stigaullde's personnel file at the DeWitt Police Department did contain the results of both a psychological examination and fingerprint checks prior to his reemployment on March 1987, the psychological report did not contain the necessary recommendations required by section 1002(2)(i).

The report states in pertinent part as follows:

> REASON FOR REFERRAL: Mr. Stigaullde was referred to this Agency for evaluation by the DeWitt Police Department where he is presently employed.
>
> TEST ADMINISTERED: MINNESOTA MULTI-PHASIC PERSONALITY INVENTORY (MMPI)
>
> TEST RESULTS AND INTERPRETATION: This appears to be a valid MMPI profile, although a significant need to appear in a favorable light and to give socially approved answers regarding self-control and moral values is suggested. A rather defensive attitude toward emotional tension and distress is likely. The test results also suggest a mildly independent and non-conforming individual, who is probably energetic and active. A history of minor difficulty with societal limits and expectations may occur.
>
> DIAGNOSTIC IMPRESSION: The test results do not suggest the presence of a psychiatric disorder.
>
> This evaluation should be considered as only one part of the overall assessment for employment.

This report interprets the results of the test administered to Stigaullde but clearly does not contain any recommendations. Therefore, compliance with section 1002(2)(i) has not been met and, according to section 12-9-108(a), Stigaullde "shall not take any official action as a police officer, and any action taken shall be held as invalid."

■ We also stated in *Grable, supra* (citing *Robbins* v. *State*, 219 Ark. 376, 242 S.W.2d 640 (1951)), that it is the duty of the state to give notice of the offense charged in the charges levied against the defendant. "Just as the defendant has no duty to establish any fact proving his innocence, *Griffin* v. *State*, 169 Ark. 342, 275 S.W. 665 (1925), he has no duty to prove the negative proposition that there are no charges against him other than the one before the court of which he complains."

Apparently, the citation that Stigaullde issued to Freeman serves as the only basis for the offense, as the State has not shown any additional charges.

> If the state is willing to stand on the charge of which the defendant complains, so be it, and the court can then determine its validity. If there is a valid charge against the defendant other than the one to the validity of which he objects, the state should be able to produce it and should have the duty to do so.

*Grable, supra.*

■ Finally, we find that the issue of whether Act 44 of November 8, 1989, which *ab initio* amended subsection (a) of section 12-9-108 to the effect that actions taken by law enforcement officers who were not in compliance with employment regulations would not be invalid merely because of that noncompliance, is an application of *ex post facto* law need not be addressed, as we will not consider arguments raised for the first time on appeal. *Barr* v. *Arkansas Blue Cross & Blue Shield, Inc.*, 297 Ark. 262, 761 S.W.2d 174 (1988) (citing *Hopper-Bond Ltd. Partnership Fund III* v. *Ragar*, 294 Ark. 373, 742 S.W.2d 947 (1988)).

Reversed and dismissed.

HAYS, J., concurs.

PRICE, J., not participating.

STEELE HAYS, Justice, concurring. I concur in the result reached in this case because the psychological evaluation fails to substantially comply with Regulation 1002(2)(i). I have expressed my views on *Grable* v. *State*, 298 Ark. 489, 769 S.W.2d 9

(1989) and *Mitchell* v. *State*, 298 Ark. 536, 769 S.W.2d 18 (1989), in a dissenting opinion to *Johnson* v. *City of Kensett*, 301 Ark. 592, 787 S.W.2d 651 (1990), a companion case also being decided today.