HERCULES INC. *v.* James C. PLEDGER, Director,
Department of Finance & Administration, State of Arkansas

94-684                                             894 S.W.2d 576

Supreme Court of Arkansas
Opinion delivered March 6, 1995

*Jack, Lyon & Jones, P.A.*, by: *Eugene G. Sayre*, for appellant.

*Joyce Kinkead*, for appellee.

TOM GLAZE, Justice. Appellant Hercules Inc. is a Delaware corporation doing business in Arkansas, and reports its business income which is subject to the Arkansas Uniform Distribution of Income for Tax Purposes Act (UDITPA) on a calendar year basis. In 1988, appellee Department of Finance & Administration (DF&A) notified Hercules that its 1987 state income tax return was subject to a "desk audit." On December 7, 1988, Hercules was notified of a proposed deficiency assessment of $346,515 in taxes, $17,326 in penalties, and $14,432 in interest.

Hercules filed a written protest and followed the prescribed administrative procedures outlined in the Arkansas Tax Procedure Act. *See* Ark. Code Ann. §§ 26-18-101 *et seq.* (Repl. 1992 & Supp. 1993). On September 8, 1989, the administrative law judge upheld the deficiency assessment. Afterwards, Hercules sought review of the law judge's decision by the Commissioner of Revenues, but the Commissioner declined to revise the administrative decision. DF&A then sent Hercules an amended final assessment and demand for payment. By letter dated March 2, 1990, Hercules remitted to DF&A a corporate check in the amount of $385,283 in satisfaction of the final assessment on its 1987 corporate return.

While DF&A was auditing and reviewing Hercules' 1987 return, Hercules was also undergoing audits on its 1985 and 1986 corporate returns. The agency decided Hercules also owed a deficiency on its 1986 return, and, on appeal, the administrative law judge agreed with DF&A once again. This time Hercules sought no further review by the Commissioner. Instead, on November 9, 1990, Hercules sent DF&A a check for $63,837 to satisfy this second deficiency assessment.

On February 26, 1991, Hercules filed its complaint in chancery court raising substantive constitutional issues as to DF&A's audit and the department's reclassification of previously nonbusiness income to business income for both the 1986 and 1987 audits. In response, DF&A contested the chancery court's jurisdiction, claiming Hercules had not paid the deficiencies "under protest" as required by Ark. Code Ann. § 26-18-406(a)(1) (Repl. 1993). Following submission of briefs and stipulation of facts by the parties, the chancellor entered an order on March 1, 1994, dismissing Hercules' complaint for lack of jurisdiction. Hercules appeals from that order of dismissal.

The Tax Procedure Act of 1979 controls our decision in this case. Specifically, § 26-18-406 provides the exclusive method for obtaining judicial review of a final deficiency determination made by DF&A. Section 26-18-406 reads in part as follows:

> (a) Within thirty (30) days of the issuance of the notice and demand for payment of a deficiency in tax established by a final determination of the hearing officer or the director under § 26-18-405, *a taxpayer may seek judicial relief from the final determination by either*:

> (1) *Paying under protest* the amount of the deficiency, plus penalty and interest determined by the director to be due, *and filing a suit* to recover that amount within one (1) year from the date of payment under protest; *or*

> (2)(A) *Filing* with the director *a bond* in double the amount of the tax deficiency due *and by filing suit* within thirty (30) days thereafter to stay the effect of the director's determination.

(Emphasis added). Here, Hercules paid the deficiency amount and filed suit within one year under § 28-18-406(a)(1). On appeal,

the paramount issue is whether Hercules "paid under protest" as required by the statute.

Hercules concedes that neither its checks to DF&A for the contested deficiency amounts, nor the letters accompanying the checks contained the words "paid under protest." Instead, Hercules argues the statutory terms "paying under protest" are ambiguous. Further, Hercules contends the record in this matter clearly establishes that the deficiency assessments were paid "as part of [Hercules'] overall protest," and that protest of the assessment over the two year period was sufficient to place DF&A on notice that Hercules contested DF&A's basis for making the challenged assessments.

While there is no dispute that Hercules complied with the notice requirements of § 26-18-404 in order to preserve its right for an administrative review of DF&A's proposed assessments, we cannot agree with Hercules that that notice complied with and preserved its right to a judicial review under § 26-18-406(a)(1). Section 26-18-404 provides:

(c) Within thirty (30) days after the service of notice of the *proposed assessment or action*, the taxpayer may file with the director *a written protest under oath, signed by himself or his authorized agent, setting forth the taxpayer's reasons for opposing the proposed assessment.*

(Emphasis added). Clearly, the Act requires a particular type of protest in order to initiate the review procedures outlined in §§ 26-18-404 and 26-18-405, which are administrative in nature and involve contesting *proposed* assessments. Whereas, paying the *final* assessment under protest is required by § 26-18-406(a)(1) in order to preserve the taxpayer's right to judicial review.

The basic rule of statutory construction is to give effect to the intent of the legislature, and when a statute is clear, it is given its plain meaning. *Pugh* v. *St. Paul Fire & Marine Ins. Co.*, 317 Ark. 304, 877 S.W.2d 577 (1994). The legislative intent is gathered from the plain meaning of the language used. *Id.* In construing any statute, the appellate court will place it beside other statutes relevant to the subject, and give it a meaning and effect derived from the combined whole. *Cousins* v. *Dennis*, 298 Ark. 310, 767 S.W.2d 296 (1989).

■■ In enacting § 28-18-406, the General Assembly had in mind at least two reasons for requiring a taxpayer to designate specifically any payment as being under protest when seeking judicial review of a final deficiency assessment. First, § 28-18-406(c) mandates that all taxes and penalties paid under protest are to be held by the director in an escrow account denominated the "Tax Protest Fund Account," and that refunds are to be made from this account. While we agree with Hercules that the phrase "paying under protest" is not defined by the Act, these terms are not ambiguous or difficult to understand. Protest is commonly understood to mean a formal disapproval or objection issued by a concerned party. Here, under § 28-18-406, it is clear that the protest is intended to place DF&A on notice that the taxpayer's payment must be deposited into the Protest Fund account. Second, a taxpayer who has protested and pursued an earlier administrative review of a proposed assessment under § 28-18-404 may reasonably decide not to pursue further adjustments of the assessment or judicial review of the final determination. While a payment which is not made under protest is deposited into general revenues and becomes available for immediate use by the state, a payment made under protest only becomes available for the state's use after the taxpayer fails to file suit within the one year period or after judicial determination that the deficiency assessment was valid. *See* § 28-18-406(c)(3).

■■ Accordingly, we reject Hercules' argument that § 28-18-406 is ambiguous, and hold that in order to preserve its right to judicial review under the Act, Hercules was required to provide notice to DF&A that its payments were being made under protest. The chancellor found as a matter of law that Hercules failed to give DF&A *any* notice that the final deficiency assessments were paid under protest. While chancery decisions are reviewed *de novo*, we will reverse only if the chancellor's findings of fact are clearly erroneous. On appeal, Hercules has failed to show that the chancellor was wrong.

■ Finally, we consider Hercules' contention that it was not made aware of its procedural remedies because DF&A failed to provide Hercules with a copy of the statement required by the 1989 Taxpayer Bill of Rights. *See* §§ 26-18-801 *et seq.* (Repl. 1992 & Supp. 1993). Hercules points out that § 26-18-802 requires DF&A to provide the taxpayer with a statement setting out the

procedure by which a taxpayer may judically appeal an adverse agency decision. Hercules points out that it never received DF&A's handout explaining how a taxpayer must pay a disputed assessment "under protest." Even if that mattered, the administrative law judge in his decision notified Hercules that it could seek further review under § 26-18-406, which clearly explains a taxpayer may seek judicial relief from the final assessment by paying the deficiency amount "under protest." In sum, Hercules was not prejudiced by DF&A's failure to give the same advice as that required under § 26-18-802. A second reason for finding no error in this contention is that § 26-18-802 has no sanctions or penalties provided for when DF&A fails to prepare and distribute taxpayer statements on the various matters provided in the statute.

Hercules makes two additional arguments on appeal, neither of which has merit. First, Hercules contends that, because DF&A threatened to file a certificate of indebtedness against it when DF&A demanded payment of the deficiency amounts, the payments were made involuntarily and in such circumstances, filing written protests are unnecessary under the common law rule. In support, Hercules cites a number of Arkansas cases decided prior to enactment of the 1979 Tax Procedure Act.

The common law rule relied on by Hercules requires payment under compulsion or coercion in order for the taxpayer to obtain a refund of the amount paid, and reads as follows:

> Where a party pays an illegal demand, with full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefor, or unless to release (not to avoid) his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and can not be recovered back. And the fact that the party, at the time of making the payment, files a written protest, does not make the payment involuntary.

*Brunson* v. *Bd. of Directors of Crawford Cty. Levee Dist.*, 107 Ark. 24, 153 S.W. 828 (1913) (citation omitted). Without determining whether Hercules' payment was made under sufficient coercion to make it involuntary, we agree with the chancellor that such determination is irrelevant. The issue in this case is not whether the taxes and interest were paid involuntarily but whether the

deficiency assessments in question were paid "under protest" as mandated under the plain language of § 26-18-406(a)(1).

Next, Hercules contends the Act is unconstitutional because it fails to provide sufficient post-deprivation procedures. Hercules failed to raise this argument below, but, even if it had raised the issue, Hercules failed to obtain a ruling on it. As we have held many times, the appellate court will not consider an issue for the first time on appeal. *Hope Education Ass'n* v. *Hope Sch. Dist.*, 310 Ark. 768, 839 S.W.2d 526 (1992). The burden to obtain a ruling on a particular theory is on the party who advanced the theory below, and matters left unresolved at trial are waived and may not be relied upon on appeal. *Morgan* v. *Neuse*, 314 Ark. 4, 857 S.W.2d 826 (1993).

For the reasons discussed, we affirm.