Charles A. PETERS *v.* STATE of Arkansas

CR 95-162                                        902 S.W.2d 757

Supreme Court of Arkansas
Opinion delivered July 3, 1995

*Doug Norwood*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Justice. This DWI case raises one issue on appeal — whether Ark. Code Ann. § 5-65-206(d)(2), which requires the state to produce for cross examination the "person calibrating the [breathalyzer] machine" refers to the person who initially calibrates the machine or the officer who subsequently tests the calibration. The trial court found that production of the latter meets the requirements of the statute. We affirm.

Appellant was arrested on March 30, 1994 for his second DWI and for speeding. He failed all of the field sobriety tests and tested .15% on the breathalyzer at the Fayetteville Police Department. He was convicted of the offense in municipal court and also in a de novo jury trial subsequently held in circuit court.

During the jury trial there was discussion about who would fulfill the requirements of § 5-65-206(d), which requires that upon notice, the state must make available to the defendant for cross examination, "the person calibrating the [breathalyzer] machine." The state presented the local senior operator who regularly tested the calibration of the breathalyzer. He testified that he did not calibrate the machine, but tested the calibration by using a known .10% alcohol solution and determining that the machine registered it properly. He also testified that the machine checks its own calibration with every test administered.

The defense argued that it was not the senior operator but rather an individual at the State Health Department in Little Rock who actually calibrated the machine, and the statute required the state to produce that person. The trial court disagreed and held that the senior operator who testified fulfilled the requirements

of the statute. Appellant was found guilty and sentenced to 45 days in jail and given a $2,000.00 fine.

On appeal, appellant first argues that the trial court erred in allowing the breath test result into evidence because of the state's failure to produce the person calibrating the breathalyzer machine, as required by Ark. Code Ann. § 5-65-206(d)(2). Section (d) provides:

> (d) The records and reports of certifications, rules, evidence analysis, or other documents pertaining to work performed by the blood alcohol program of the Arkansas Department of Health under the authority of this chapter shall be received as competent evidence as to the matters contained therein in the courts of this state subject to the applicable rules of criminal procedure when duly attested to by the program director or his assistant, in the form of an original signature or by certification of a copy. These documents shall be self-authenticating.

> (1) However, the machine performing the chemical analysis shall have been duly certified at least once in the 1st three (3) months preceding arrest and the operator thereof shall have been properly trained and certified.

> (2) Nothing in this section shall be deemed to abrogate a defendant's right of cross-examination *of the person calibrating the machine, the operator of the machine, or any person performing work in the blood alcohol program of the Arkansas Department of Health, who shall be made available by the state if notice of intention to cross-examine is given ten (10) days prior to the day of hearing or trial.*

> (3) The testimony of the appropriate analyst or official may be compelled by the issuance of a proper subpoena, in which case, the records and reports shall be admissible through the analyst or official who shall be subject to cross-examination by the defendant or his counsel. (emphasis added)

At trial, both the senior operator in charge of the breath testing installation for the Fayetteville Police Department and the

operator who actually performed appellant's breath test, were available to testify. Senior operator Martin testified that he tested the breath machine monthly; he also stated, "well, you're not calibrating it, you're testing the calibration. We're not allowed to do any calibrating. We're running a test to make sure it's within the tolerance and that the calibration is correct . . . we test the calibration. The word 'calibrate' and 'test the calibration' is used too much interchangeably. That's not the fact . . . ."

We have held that the person who calibrates the machine must be made available for cross examination, see *Smith* v. *State*, 301 Ark. 569, 785 S.W.2d 465 (1990) and *State* v. *Massey*, 302 Ark. 447, 790 S.W.2d 175 (1990). However, we have not addressed the precise issue of who qualifies as this person under the statute in question. Senior operator Martin's testimony that he did not calibrate the machine is not determinative of this issue. It is for this court to decide what a statute means. See *Bryant* v. *Mars*, 309 Ark. 480, 830 S.W.2d 869 (1992).

The Act in question provides that all testing procedures be done according to approved methods of the Arkansas Department of Health. Ark. Code Ann. § 5-65-204(c) and (d). We look to the regulations of a state agency when necessary, to determine if an act has been complied with, and to construe its meaning. *Tharp* v. *State*, 294 Ark. 615, 745 S.W.2d 612 (1988). We take judicial notice of state agency regulations that are duly published. *Grable* v. *State*, 298 Ark. 489, 769 S.W.2d 9 (1989). Here, the *Arkansas Regulations for Blood Alcohol Testing* (1989) does not provide a definition for "calibration" or "calibrator" within the definitions section. However, the definitions include:

Calibration Device — see Simulator.

Calibration Test — a test, using a simulator or calibration device containing a known concentration of ethyl alcohol to check, rectify, or verify the accuracy of an alcohol testing instrument.

Operator — an individual who has met the requirements outlined in 1.15, thus qualifying to test subjects on a specified type of breath-testing instrument or instruments and to perform related tasks in accordance with Department procedures and these Regulations.

\* \* \*

Senior Operator - an individual who has met the requirements outlined in 1.13 thus qualifying to (1) test subjects on a specified type of breath-testing instrument or instruments, (2) run the Department required calibration checks and proficiency tests on the specified breath-testing instruments at his place of employment, and (3) perform other required tasks related to alcohol testing; all of the above in accordance with Department procedures and these Regulations. A Senior Operator also may qualify to instruct other personnel in the operation of the specified breath-testing instrument(s) to which his certification applies and may qualify to analyze blood samples as outlined in 1.14.

Under Part E. - Calibration and Calculation of Results, the regulations provide:

4.50 Procedures on Approved Instruments - Type A1 and Type A2. A calibration test shall be performed to determine if an instrument produces results within the standard of accuracy (±01). Due to individual characteristics of the various approved instruments, different procedures are required for performing the calibration tests. They are described as follows.

a. BAC DataMaster. A calibration test is automatically performed with each subject test and is recorded by the instrument as part of the test record. There is therefore, no requirement to record the calibration test as a special entry in the log book.

b. Breathalyzer Models 1000 and 2000, and Intoxilyzer Model 401AS. A Senior Operator is to run a calibration test at least once within twenty-four hours either before or after any subject test using a standard solution in an approved breath simulator device. The calibration test is to be recorded chronologically in the instrument logbook which is to be open to inspection by the Department.

c. Alco-Analyzer Gas Chromatograph Model 1000 and Gas Chromatograph Intoximeter Model Mark IV.

(1) <u>Breath Samples</u>. When operated in the integrate mode, the instrument records only the ethyl alcohol in a sample on chart paper marked with graduations allowing test results to be read directly from the chart paper. To show that the instrument is calibrated properly, a standard solution in an approved breath simulator device is to be used with every subject test. The standard must give a reading of its intended value 0.01g/210 breath. For example, a 0.10 standard must read between 0.09 and 0.11g/210 breath.

The "calibrations" discussed in the regulations pertain to methods for testing the accuracy of the machine and not the initial setting of the equipment. Definitions are provided for both the "operator" of the machine and the "senior operator, " who is responsible for checking the calibration of the machine on an ongoing and continuing basis. It is clear from the regulations that a reasonable interpretation of § 5-65-206(a)(2) and the legislative intent behind it is that the "person calibrating the machine" is the person testing the accuracy of the machine's measurements as outlined in the regulations, or the senior operator. There is simply no sufficient basis in the regulations to support the interpretation argued by the appellant.

Finally, appellant argues that even if the senior operator was the proper person to testify, he never gave direct testimony in front of the jury and therefore could not be cross-examined by appellant as provided by the statute. This argument is totally without merit. Appellant requested that the senior operator be examined outside the hearing of the jury and stated that if the court determined him to be the proper person for the state to produce pursuant to his request for the person calibrating the machine, appellant would allow the test results to be introduced without further contest. He stated he had no evidence to challenge the accuracy of the machine. This is in fact what transpired and appellant allowed senior operator Martin to be excused after his in-camera testimony and the court's adverse ruling. Appellant then permitted the test results to be introduced through the testimony of the operator, Officer Yates, without further challenge to the accuracy of the test. He cannot now complain that

he was not allowed to cross-examine the senior operator when he chose to forgo this opportunity.

We note that in addition to the breathalizer test, there was overwhelming evidence in support of the verdict of DWI. The appellant failed all the field sobriety tests, except one he refused to do, stating that he could not perform it. He told the arresting officer that the breathalyzer test was a "waste of time" because he was drunk and he declined a blood test for the same reason.

Affirmed.