The Honorable Jodie Mahony State Representative 106 W. Main, Suite 406 El Dorado, AR 71730-5637
Dear Representative Mahony:
I am writing in response to your request for my opinion on the following questions:
 1. Did the Court Order issued by the Honorable Collins Kilgore find Arkansas Code Annotated § 26-80-204(18)(D) unconstitutional?
 2. Did the Arkansas Supreme Court in its Opinion No. 01-836 in the Lake View case find Arkansas Code Annotated § 26-80-204(18)(D) unconstitutional?
 3. Assuming that the Lake View School District offered evidence before Judge Kilgore that the use of supplemental debt service funds to meet the requirements of Amendment 74 as provided by Arkansas Code Annotated § 26-80-204(18)(D) did not satisfy the requirements of Amendment 74 and Judge Kilgore did not specifically rule on that issue, does this render Arkansas Code Annotated § 26-80-204(18)(D) unconstitutional?
 4. Does the fact that the Arkansas Supreme Court did not discuss Arkansas Code Annotated § 26-80-204(18)(D) in its decision or in response to the State Defendants' Petition for Partial Rehearing, Certificate of Merit, and Brief in Support result in Arkansas Code Annotated § 26-80-204(18)(D) being unconstitutional?
 5. If neither the Supreme Court nor Judge Kilgore specifically held (D) to be unconstitutional, would (D) survive a future constitutional challenge?
RESPONSE
In my opinion, no court has yet addressed the constitutionality of A.C.A § 26-80-203(18)(D), meaning that the statute remains presumptively constitutional. However, based on the Arkansas Supreme Court's decision in the Lake View case, I believe a reviewing court would strike the legislation if it were challenged.
Question 1: Did the Court Order issued by the Honorable Collins Kilgorefind Arkansas Code Annotated § 26-80-204(18)(D) unconstitutional?
In my opinion, the answer to this question is "no."
Amendment 74 of the Arkansas Constitution provides in pertinent part:
 (b)(1) There is established a uniform rate of ad valorem property tax of twenty-five (25) mills to be levied on the assessed value of all taxable real, personal, and utility property in the state to be used solely for maintenance and operation of the schools.
 (2) Except as provided in this subsection the uniform rate of tax shall not be an additional levy for maintenance and operation of the schools but shall replace a portion of the existing rate of tax levied by each school district available for maintenance and operation of schools in the school district. The rate of tax available for maintenance and operation levied by each school district on the effective date of this amendment shall be reduced to reflect the levy of the uniform rate of tax. If the rate of tax available for maintenance and operation levied by a school district on the effective date of this amendment exceeds the uniform rate of tax, the excess rate of tax shall continue to be levied by the school district until changed as provided in subsection (c)(1). If the rate of tax available for maintenance and operation levied by a school district on the effective date of this amendment is less than the uniform rate of tax, the uniform rate of tax shall nevertheless be levied in the district.
The legislation enabling the above constitutional provisions is Acts, 1997, No. 1300, § 3, codified at A.C.A. § 26-80-204(18) (Supp. 2001), which provides:
 "Uniform rate of tax" means a uniform rate of ad valorem property tax of twenty-five (25) mills to be levied on the assessed value of all taxable real, personal, and utility property in the state to be used solely for maintenance and operation of the schools. In calculating the uniform rate of tax imposed by Arkansas Constitution, Article 14, § 3, as amended by Arkansas Constitution, Amendments 11, 40, and 74, the following categories of millage may be utilized to meet the minimum millage requirement:
(A) The local school district's maintenance and operation millage;
(B) The dedicated maintenance and operation millage;
(C) Excess debt service millage;[1] and
 (D) The millage derived from the ratio of the debt service funding supplements[2] divided by the total assessment.
The trial court entered the following conclusion of law regarding the foregoing:
 The Plaintiffs have raised the issue that Amendment 74 and Article 2, §§ 2, 3 and 18 have been violated by allowing under A.C.A. § 26-80-201
et seq. school districts to use the excess debt millages to satisfy the uniform tax rate of 25 mills. However, the court finds otherwise. Plaintiffs' argument is that Amendment 74 requires school districts to levy twenty-five mills to be dedicated to maintenance and operations, and that by failing to do so the State loses substantial sums of money that would otherwise be available for Arkansas public schools. Some school districts have levied various millages in order to secure debt incurred through bond issues. Because of the requirement that millages dedicated to the retirement of debt be equal to 150% of the indebtedness there are virtually always excess debt millages. In fact, it is represented in the bond indenture, and, therefore, the voters must be presumed to know that the excess millages are to be available for maintenance and operations.
 Plaintiffs complain that this use of excess debt service mills does not satisfy Amendment 74 and that the amendment requires each school district to levy twenty-five mills, independent of any other mills, exclusively for maintenance and operations. However, Amendment 74(b)(2) states in part, "Except as provided in this subsection the uniform rate of tax shall not be an additional levy for maintenance and operation of the schools but shall replace a portion of the existing rate of tax levied by each school district available for maintenance and operation of schools . . ."
 The Plaintiffs argue for a result that could easily have been obtained by more specific language in the amendment. However, no such language is present, and therefore, the method of counting mills to meet the uniform rate of tax used by the State complies with the language of the Constitution.
Lake View School District No. 25 v. Huckabee, Pulaski County Chancery Court Case No. 1992-5318, Final Order at 51 (May 25, 2001).
The opening sentence of this passage clearly defines the constitutional issue as being the use of "excess debt millages to satisfy the uniform tax rate of 25 mills." (Emphasis added.) The statutory authorization for such use is subsection (C) of A.C.A. § 26-80-204(18), not subsection (D). At no point in the passage just recited did the court even refer to A.C.A. § 26-80-204(18)(D), which purports to authorize the practice of counting towards the uniform tax rate a "millage"[3] that is entirely distinct from an excess debt millage. I am not prepared to opine that the trial court ruled sub silentio or by implication on the constitutionality of subsection (D). In my opinion, the trial court did no more than affirm the constitutionality of subsection (C).
Question 2: Did the Arkansas Supreme Court in its Opinion No. 01-836 inthe Lake View case find Arkansas Code Annotated § 26-80-204(18)(D)unconstitutional?
In my opinion, the answer to this question is likewise "no."
In subsection VIII(d) of its slip opinion, Lake View School District No.25 v. Huckabee, Ark. Supreme Court Case No. 01-836 (Nov. 21, 2002), at 54-58, the supreme court addressed the trial court's reading of A.C.A. § 26-80-204(18). Significantly, the court began its discussion by defining the issue as being whether the statute permissibly "authorized school districts to subtract excess debt millages against the uniform tax of 25 mills owed to the State under Amendment 74." Id. at 55 (emphasis added). The court repeatedly focused on the subtraction of excess debt millages from the uniform tax rate as being the issue on appeal; indeed, in reciting the statute, it highlighted only subsection (C) as being significant. Id. at 56.
To be sure, the court complicated its analysis in offering the following conclusions:
 Crediting excess debt service millage against the 25 mill obligation is not contemplated by Amendment 74. Nor can we accept the trial court's explanation for finding § 26-80-204(28)(C) (D) to be constitutional.
Id. (emphasis added). However, following this reference to subsection (D), the court discussed only the constitutionality of the excess-debt-service-millage credit. The closest it arguably came to referring to subsection (D) — and, for reasons discussed in my response to question 5, I do not really consider the passage applicable — is in the following:
 If a school district already has in effect millages for maintenance and operation, those millages may be counted against the uniform rate of 25 mills required by Amendment 74. Nowhere, however, does Amendment 74 provide that part of a millage adopted by the school district for an entirely different purpose may be subtracted from the 25 mills owed.
The General Assembly's legislation permitting excess debt service millage is clearly contrary to the plain meaning of Amendment 74.
Id. at 57 (emphasis added). The court then concluded its analysis as follows: "We hold that Ark. Code Ann. § 26-80-204(18)(C) violates Amendment 74 of the Arkansas Constitution and is void and of no effect."Id. at 58.
It would appear, then, that the court intended to rule unconstitutional only A.C.A. § 26-80-204(18)(C) — the only provision addressed by the trial court. Unaccountably, the court did not address this issue in ruling on the State Defendants' Petition for Partial Rehearing, Certificate of Merit, and Brief in Support, in which the State invited the court to clarify the above described "ambiguity as to the scope of the Court's decision relative to Amendment 74." Instead of resolving the ambiguity in its ruling on the state's Petition, as might be expected, Justice Brown clarified the intended scope of the court's ruling in a letter of correction to counsel dated December 19, 2002. In this correspondence, the court observed:
 On page 56 of our opinion, line 12, there is a typographical error. The citation to the statute is amended to read "§ 26-80-204(18)(C)" instead of "§ 26-80-204(18)(C) (D)."
This correction in all likelihood reflects the court's recognition that the trial court rendered no opinion regarding the constitutionality of subsection (D) and that this issue was consequently not before the court on appeal. In my opinion, then, the Supreme Court did no more in its decision than rule that A.C.A. § 26-80-204(18)(C) is unconstitutional.
Question 3: Assuming that the Lake View School District offered evidencebefore Judge Kilgore that the use of supplemental debt service funds tomeet the requirements of Amendment 74 as provided by Arkansas CodeAnnotated § 26-80-204(18)(D) did not satisfy the requirements ofAmendment 74 and Judge Kilgore did not specifically rule on that issue,does this render Arkansas Code Annotated § 26-80-204(18)(D)unconstitutional?
In my opinion the answer to this question is "no."
The fact that a party has offered evidence on an issue in no way amounts to a judicial determination of that issue. It is up to the party seeking any such judicial determination to request that the court specifically address the issue in its ruling. Simply put, unless a court rules on an issue, it will be as if that issue had never been raised.
Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. Ford v. Keith, 338 Ark. 487,996 S.W.2d 20 (1999); ACW, Inc. v. Weiss, 329 Ark. 302, 947 S.W.2d 770
(1997). If it is possible to construe a statute as constitutional, a court will do so. Jones v. State, 333 Ark. 208, 969 S.W.2d 618 (1998). I believe the presumption of constitutionality will continue to attach to A.C.A. § 26-80-204(18)(D) until a litigant obtains an express ruling by a court under the just recited standard declaring the statute unconstitutional.
Question 4: Does the fact that the Arkansas Supreme Court did not discussArkansas Code Annotated § 26-80-204(18)(D) in its decision or in responseto the State Defendants' Petition for Partial Rehearing, Certificate ofMerit, and Brief in Support result in Arkansas Code Annotated §26-80-204(18)(D) being unconstitutional?
In my opinion, the answer to this question is also "no."
I should note at the outset that the Supreme Court initially did discuss A.C.A. § 26-80-204(18)(D) by expressing its disagreement with the trial court's supposed conclusion that the statute is constitutional. As noted in my response to question 2, supra, the Supreme Court deleted this discussion from its decision by correspondence to counsel dated December 19, 2002.
As noted in my response to question 3, supra, until a court rules a particular statute unconstitutional, the statute will be presumed constitutional. Because the Supreme Court failed to address the issue, I believe A.C.A. § 26-80-204(18)(D) remains presumptively constitutional.
Question 5: If neither the Supreme Court nor Judge Kilgore specificallyheld (D) to be unconstitutional, would (D) survive a futureconstitutional challenge?
In my opinion, the answer to this question is in all likelihood "no."
As noted in my response to question 3, supra, any statute is presumed constitutional, and a court will interpret a challenged statute as constitutional if at all possible. Ford v. Keith, supra and Jones v.State, supra. Notwithstanding this stringent presumption, based upon the Supreme Court's analysis in the Lake View case, I believe a court would almost certainly conclude that A.C.A. § 26-80-204(18)(D) suffers from the same constitutional deficiency as A.C.A. § 26-80-204(18)(C).
In addressing the constitutionality of subsection (C), the court unequivocally declared that the 25-mill levy for maintenance and operation required under Ark. Const. amend. 74 must be specifically earmarked for those purposes. Slip Opinion at 57. The court expressly held that any excess debt service millage, regardless of whether the revenue derived from the millage is needed to service the bonded indebtedness, has been "adopted by the school district for an entirely different purpose" than maintenance and operation and hence cannot be "subtracted from the 25 mills owed." Id.
I believe a reviewing court would apply precisely the same reasoning to strike down A.C.A. § 16-80-104(18(D). As noted in footnote 2, supra, the Code defines the term "debt service funding supplements" as meaning in pertinent part: "the state financial aid provided to qualifying local school districts for the purpose of reducing existing debt service burdens and increasing the amount of local revenue available for maintenance and operation expenditures." A.C.A. § 26-80-204(5). This category of funding is indistinguishable from "excess debt service millage" insofar as both are, in the first instance, earmarked for the direct purpose of debt service relief — a purpose other than maintenance and operation of the schools. I appreciate that the legislature has expressly envisioned that both categories of funding might be directed to maintenance and operation, as well as to other expenses; however, as the supreme court made clear in its Lake View decision, Slip Opinion at 57, to qualify as a credit against the 25-mill levy required under Ark. Const. amend. 74, the funding must take the form of a levy adopted exclusively "for maintenance-and-operation purposes." Slip Opinion at 57. Neither subsection (C) nor subsection (D) of the statute meets this criterion.
Indeed, in my opinion, subsection (D) of the statute is even more clearly defective from a constitutional standpoint than is subsection (C). Amendment 74 provides that the 25-mill "uniform rate of tax" might be offset only by an "existing rate of tax levied by each school district available for maintenance and operation of schools in the school district" — a condition that in the supreme court's view can be met only by levying a local property tax millage dedicated exclusively to maintenance and operation. Not only does neither category of revenue listed as credits in A.C.A. §§ 26-80-204(18)(C) (D) qualify as dedicated to these exclusive uses, the credit set forth in subsection (D) does not even qualify as a "millage" in the sense that term is used in Amendment 74. A "millage" or "mill rate" is a figure used in levying a property tax "whereby each mill represents $1 of tax assessment per $1,000 of the property's assessed value." Black's Law Dictionary (7th ed. 1999). This concept of "millage" has nothing to do with the formula set forth for computing the "millage" to be credited against the uniform rate pursuant to subsection (D): "[t]he millage derived from the ratio of the debt service funding supplements divided by the total assessment." To divide money received from the state by total property assessments will yield a quotient, but that quotient does not represent a figure that any local school district has used in levying a tax on its residents — a condition I believe is required to warrant a credit under Amendment 74. In my opinion, no "millage" thus computed may be subtracted from the 25-mills uniform tax rate mandated by Amendment 74. Accordingly, I believe a court faced with the issue would declare A.C.A. § 26-80-204(18)(D) unconstitutional.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] Subsection 26-80-204(6) of the Code defines the term "debt service millage" as follows:
 "Debt service millage" means the total number of mills voted by the electors of a school district to be pledged as security for the retirement of bonded indebtedness.
Subsection (9) of this statute defines the term "excess debt service millage" as follows:
 "Excess debt service millage" means the difference between the debt service millage levied and the debt service millage required. This amount shall be presumed to be available for maintenance and operation but may be used for other school purposes, provided that the district is in compliance with the uniform rate of tax.
Subsection (7) defines the term "debt service millage required" as follows:
 "Debt service millage required" means the calculated millage rate equal to the amount of millage pledged to mandatory callable bonds plus the result of the scheduled calendar year bonded debt payment divided by the total assessed value of real, personal, and utility property in the local school district.
[2] Subsection 26-80-204(5) defines the term "debt service funding supplements" in pertinent part as follows:
 "Debt service funding supplements" means the state financial aid provided to qualifying local school districts for the purpose of reducing existing debt service burdens and increasing the amount of local revenue available for maintenance and operation expenditures. . . .
[3] I have used quotation marks here because, notwithstanding the legislature's use of the term in A.C.A. § 26-80-204(18)(D), I strongly doubt that this means of funding could accurately be described as a "millage." See response to question 5, infra.