The Honorable Mary Anne Salmon State Senator 29 Heritage Park Circle North Little Rock, AR 72116
Dear Senator Salmon:
I am writing in response to your request for my opinion concerning an audit issue in connection with Act 1738 of 2004, and specifically the section of the act that imposed a temporary restriction on the contracting authority of school districts, charter schools, and education cooperatives. The relevant section is codified at A.C.A. § 6-13-620, and provides:
 Beginning on July 16, 2003, through July 1, 2004, notwithstanding any other provision of law, no school board of any public school or any governing body of a charter school or an educational cooperative shall enter into any contractual or project obligation exceeding seventy-five thousand dollars ($75,000) or one percent of the district's total state and local revenues for additional base funding, as defined on lines 15 and 16 of the Department of Education's May 16, 2002 State Aid Notice, whichever is greater, for the purchase, sale, construction, improvement, or repair of equipment, facilities, motor vehicles, buildings, or real property sites without the prior written approval of the state board or the Director of the Department of Education as allowed in emergency situations.
Acts 2003, No. 1738, § 1 (A.C.A. § 6-13-620 (b) (Supp. 2003)).
You have asked for my opinion regarding the intent of this provision. Your request is prompted by the 2003-2004 audit of the Academic Plus Charter School, which you report cited the school for noncompliance with Act 1738. The correspondence that you have provided in this regard states that "[t]he Walton Family Foundation granted Academic Plus Charter School $85,000 to install a wireless computer network" and "[t]hose funds were expended exactly per the grant proposal. . . ." E-mail Correspondence from Caroline Proctor to Mary Anne Salmon (November 29, 2004). Although I have no further information regarding the audit report, implicit in this statement is the fact that the Charter School did not seek the "prior written approval of the state board" in accordance with A.C.A. § 6-13-620
(b), supra[1] I assume this was the basis for the noncompliance citation in the audit.
RESPONSE
In my opinion, it appears clear on the face of this statute that the legislature intended for the $75,000 restriction to apply to "any contractual or project obligation" of a charter school or an educational cooperative during the specified time period (July 16, 2003 through July 1, 2004). Accordingly, if the contract price or the project amount was expected to exceed $75,000, I believe the restriction applied, thus triggering the pre-approval requirement. See A.C.A. § 6-11-109, supra at n. 1 (regarding the petition for approval).
In offering this opinion, I am guided by established principles of statutory interpretation, starting with the basic rule which is to give effect to the intent of the legislature. Ford v. Keith, 338 Ark. 487,996 S.W.2d 20 (1999). When the language of a statute is plain and unambiguous, legislative intent is determined from the ordinary meaning of the language used. Central Southern Companies, Inc. v. Weiss339 Ark. 76, 3 S.W.3d 294 (1999). The Arkansas Supreme Court affirmed this principle as follows in Pugh v. St. Paul Fire Marine Ins. Co.,317 Ark. 304, 307, 877 S.W.2d 577 (1994):
 The basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intent of the General Assembly. Roy v. Farms Merchants Ins. Co., 307 Ark. 213, 819 S.W.2d 2 (1991). When a statute is clear, it is given its plain meaning and we do not search for legislative intent. That intent must be gathered from the plain meaning of the language used. Hinchey v. Thomasson, 292 Ark. 1, 727 S.W.2d 836 (1987).
Here, for the applicable time period, the plain language of A.C.A. §6-13-620 (b), supra, required the State Board of Education's prior approval of those contracts or projects of a charter school or educational cooperative that were expected to exceed $75,000.[2] With regard, in particular, to the $89,000 project of the Academic Plus Charter School, I must conclude that the source of funding for that project, i.e., a private grant, had no bearing on whether the restriction imposed by A.C.A. § 6-13-620 (b) was applicable.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] The specific procedures in this regard are set forth in A.C.A. §6-11-109 (Supp. 2003) (codification of Section 5 of Act 1738 of 2003). This provision authorized the school district or local board of the charter school or educational cooperative to petition the State Board of Education for approval of a contract or project exceeding the specified amount. The petition had to include, inter alia, "a statement explaining the purpose of the contract or project[,]" and "[t]he total expected contract price or project amount[.]" A.C.A. § 6-11-109(a)(2) and (3). The state board's action on the petition was to be based on its "determination of whether the petition would be in the best interest of the state's system of education[.]" Id. at subsection (b)(1).
[2] The language in § 6-13-620(b) regarding "one percent of thedistrict's total state and local revenues for additional base funding[,]" (emphasis added) clearly applied only to a school district. Cf. A.C.A. §6-11-109(a) (referring to "[a]ny school district, local board of directors, or other person seeking prior written approval from the State Board of Education . . . under . . . § 6-13-620(b). . . ." (Emphasis added)).